752 P.2d 781

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Chris TAYLOR, Defendant–Appellant.**

No. 17112.

Supreme Court of New Mexico.

March 15, 1988.

Rehearing Denied April 18, 1988.

Winston Roberts–Hohl, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

STOWERS, Justice.

On April 19, 1985, defendant-appellant Chris Taylor, two youths and the mother of one of them drove to a particular laundromat in Santa Fe with the intent of "breaking some bones" of one of its employees. Upon entering the laundromat, the three youths discovered that their intended victim was not present. When they came out, the mother, who was the driver of the vehicle, told them to go back inside and rob the laundromat. They put masks over their faces and one of them carried a gun. During the robbery the gun was fired, killing a laundry attendant. The youths immediately ran outside, hopped into the car and drove off. Shortly thereafter, all were apprehended.

One of the three youths agreed to testify for the state in exchange for treatment as a child in children's court. Defendant and the third youth were initially charged in children's court and then, as a result of the granting of a motion to transfer, were both transferred to district court to be tried as adults.

At the conclusion of the jury trial, defendant was convicted on all three counts: count one of first degree murder, contrary to NMSA 1978, Sections 30–2–1, 30–1–13 and 30–16–2 (Repl.Pamp.1984); count two of robbery by use of or threatened use of violence while armed with a deadly weapon, contrary to NMSA 1978, Sections 30–16–2 and 30–1–13 (Repl.Pamp.1984) and Section 31–18–16 (Repl.Pamp.1987); count three of conspiracy for the purpose of committing a felony, contrary to NMSA 1978, Sections 30–28–2 and 30–16–2 (Repl.Pamp.1984). Defendant was sentenced to a life term. It is from this judgment of conviction that defendant now appeals. We affirm.

The issues argued by defendant are:

1. The trial court lacked jurisdiction to proceed against defendant as an adult.

2. The trial court erred in refusing defendant's proffered jury instructions on involuntary manslaughter.

3. The removal of the children's court judge was improper.

4. The sentence imposed was not proper.

5. The prosecutor's offered plea bargain with a fixed minimum sentence was an abuse of discretion.

6. Defendant was denied effective assistance of counsel.

We discuss these issues in the order presented.

### 1. *Lack of Jurisdiction.*

Defendant argues that the district court lacked subject matter jurisdiction to proceed against him on two grounds: the transfer hearing was not timely held, and there was no statutory authorization for the transfer of the robbery and conspiracy offenses along with the murder offense.

On April 22, 1986, the state filed a petition in children's court, which has exclusive jurisdiction of a child under the age of eighteen, alleging that defendant was delinquent, in need of care, supervision and rehabilitation, and that he and two other children had committed murder, robbery and conspiracy. *See* NMSA 1978, § 32–1–9 (Repl.Pamp.1986). That same day, the state filed a petition for a detention hearing; consequently, defendant remained in continuous custody since April 20, 1986. On the following day, April 23, the state filed a motion for a discretionary transfer under Section 32–1–30, NMSA 1978 (Repl. Pamp.1986), to transfer the matter to district court and to prosecute defendant as an adult.

The transfer hearing started on May 15, 1986, in children's court within the necessary time period. At the beginning of this hearing, the state indicated its readiness to proceed on the probable cause determination but sought a continuance on the issue of defendant's amenability to treatment as a child. The state claimed that this continuance was required to review a recently completed psychological profile on defendant and a codefendant. Defense counsel did not object to the request nor to the bifurcation of the transfer hearing. The probable cause determination proceeded to conclusion on May 15 with the presentment

of evidence and arguments by counsel. Pursuant to Section 32–1–30(A)(5), NMSA 1978 (Repl.Pamp.1986), the court found that there were reasonable grounds to believe that the child, defendant, committed the alleged delinquent acts. The remainder of the hearing was continued until July 16 and 17, 1986, to resolve the issue of defendant's amenability to treatment as a child. The defendant contends that since a portion of the hearing was delayed for more than thirty days from the date of the filing of the motion to transfer, the resultant transfer order dated July 17, 1986, did not confer jurisdiction on the district court.

■ Rule 10–223, SCRA 1986 (formerly NMSA 1978, Child Ct.R. 43.1 (Repl.Pamp. 1982)), reads:

A. **Respondent in detention.** If the respondent is in detention, the *transfer hearing shall be commenced within thirty (30) days* from whichever of the following events occurs latest:

(1) the date the motion for transfer is filed;

(2) if the proceedings have been stayed on a finding of incompetency to participate in the transfer hearing, the date an order is filed finding the defendant competent to participate in a transfer hearing; or

(3) if the respondent fails to appear at any time required by the court, the date the respondent is taken into custody after the failure to appear. [Emphasis added.]

The plain meaning of this rule suggests an interpretation contrary to defendant's claim. Since the state filed its motion to transfer on April 23, 1986, and the transfer hearing *was commenced* within thirty days thereafter, the requirements of Rule 10–223 were complied with. No words in the rule mandate that the hearing be commenced *and completed* within thirty days. The requirement is met even if the hearing is not completed within that time period.

Moreover, defendant relies on *State v. Doe*, 94 N.M. 446, 612 P.2d 238 (Ct.App. 1980), but this case is inapplicable. At the time *Doe* was decided, neither the Rules of Procedure for the Children's Court nor the Children's Code set a time limitation for when a transfer hearing had to be held other than stating it must be prior to an adjudicatory hearing on the petition. The court of appeals held therein that when a child is in detention, the transfer had to be commenced within thirty days from the date the motion to transfer is filed. *Id.* at 449, 612 P.2d at 241. Nowhere did the court state that the hearing had to be completed within those thirty days.

Since the decision in *Doe*, Rule 10–223 was adopted to prescribe time limits for holding a transfer hearing. The rule requires that the hearing must be commenced within the thirty-day period. The purpose of the rule is to provide early hearings, but does not preclude continuances when reasonable grounds are shown.

■ Next, defendant claims that there was no statutory authorization for the transfer of the offenses of robbery and conspiracy since NMSA 1978, Section 32–1–30(A)(1) (Repl.Pamp.1986), provides only for the transfer of the offense of murder when the child, as in this case, was fifteen years of age at the time of the conduct. We held in *State v. Garcia*, 93 N.M. 51, 53–54, 596 P.2d 264, 266–67 (1979), that if the children's court finds at the hearing that the juvenile should be prosecuted as an adult, then the district court obtains personal jurisdiction over the child and *subject matter jurisdiction over the entire case.* Thus, in the instant case, the entire matter was properly transferred, not merely the offense of murder, to prevent fragmentation of the criminal proceedings on offenses arising from the same criminal charges. *Garcia*, 93 N.M. at 54, 596 P.2d at 267.

2. *Requested Jury Instructions on Involuntary Manslaughter.*

At trial, defendant tendered requested jury instructions on involuntary manslaughter as a lesser included offense of murder in the commission of a felony. The

district court refused to give these instructions and defendant claims reversible error.

■ "Murder in the first degree is the killing of one human being by another without lawful justification or excuse * * * in the commission of or attempt to commit any felony." NMSA 1978, § 30–2–1(A)(2) (Repl.Pamp.1984). "Involuntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection." NMSA 1978, § 30–2–3(B) (Repl.Pamp.1984). Only where the evidence could support a conviction of the lesser offense must the trial court instruct the jury on a lesser included. *State v. Omar–Muhammad*, 105 N.M. 788, 791, 737 P.2d 1165, 1168 (1987); *State v. Gutierrez*, 88 N.M. 448, 451, 541 P.2d 628, 631 (Ct.App.1975); *see also State v. Fero*, 105 N.M. 339, 343, 732 P.2d 866, 870 (1987). The evidence relied on by defendant in support of his tendered instructions is a statement given by an accomplice. In one of his versions, the accomplice stated that another accomplice had the cash drawer in his left hand and a gun in his right hand; that he was unable to balance both; and as a result he dropped the gun, the butt hit the counter and discharged, killing the laundry attendant.

■ There are three separate courses of conduct that constitute involuntary manslaughter: one, the commission of an unlawful act not amounting to a felony; two, the commission of a lawful act that might produce death, in an unlawful manner; and three, the commission of a lawful act that might produce death without due caution and circumspection. *La Barge v. Stewart*, 84 N.M. 222, 224, 501 P.2d 666, 668 (Ct. App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972).

■ The court's refusal to give the instructions was correct, since none of the conduct which constitutes involuntary manslaughter was present. As to the first course of conduct, the commission of an unlawful act not amounting to a felony is not supported in the evidence. Robbery

while armed with a firearm is a felony. *See* NMSA 1978, § 30–16–2 (Repl.Pamp. 1984). There is no evidence of the commission of any lawful act during which the gun discharged that would have permitted an instruction under the second or third circumstance of involuntary manslaughter. The act involved here, the discharge of the gun during the commission of a robbery, was the *unlawful act.* To have given the requested instruction, which included acts for which there was no evidentiary support, would have introduced false issues and misled the jury. The facts herein do not fit the definition of involuntary manslaughter and the proposed jury instructions were correctly refused by the trial court.

### 3. *Removal of the Children's Court Judge.*

The record does not support defendant's claim that the state did not object to the children's court judge's presiding in the district court as required by NMSA 1978, Section 32–1–30(C) (Repl.Pamp.1986). The state did object orally at the arraignment and in writing on August 13, 1986, by filing its election to excuse the children's court judge. The objection was timely filed occurring more than ten days before the adjudicatory hearing on the merits. *See State v. Doe*, 95 N.M. 369, 622 P.2d 274 (Ct.App.1980). Notwithstanding, it also appears from the record that defendant failed to properly preserve this issue for appeal. *See* SCRA 1986, 12–216(A); *State v. Hovey*, 106 N.M. 300, 742 P.2d 512 (1987).

### 4. *Sentence.*

■ We do not agree with defendant that the trial court had discretion not to sentence defendant to a life term after a conviction of a first degree capital felony. Defendant claims that the Children's Code, Section 32–1–30(B) (Repl.Pamp.1986) NMSA 1978, permits the trial judge to impose "any conditions" on defendant's sentence including altering the term of that sentence.

Section 32–1–30(B) states in relevant part:

In the event the child after such transfer [to the district court] is convicted and sentenced to confinement, he shall be remanded to the custody of the secretary of corrections for confinement at the facility or institution most appropriate with regard to the age of the child and the execution of the sentence; provided, such confinement shall be subject to any conditions the court may impose.

Since defendant, however, was convicted of a first degree capital felony, Section 32–1–30(B) must be read in conjunction with Section 31–18–14(A) (Repl.Pamp.1984) NMSA 1978. Section 31–18–14(A) provides that "if the defendant has not reached the age of majority at the time of the commission of the capital felony for which he was convicted, he shall be sentenced to life imprisonment." The use of the word "shall" in Section 31–18–14(A) is mandatory; therefore, the trial judge had no discretion in sentencing defendant to a life term. *See Jaramillo v. O'Toole,* 97 N.M. 345, 639 P.2d 1199 (1982); *State v. Davis,* 97 N.M. 745, 643 P.2d 614 (Ct.App.1982). "Conditions" of confinement as used in the Children's Code Section 32–1–30(B) may encompass methods of rehabilitation imposed by the sentencing judge, but does not refer to any alteration of the term of confinement. Alterations of basic sentences are permitted only for noncapital felonies and noncapital, nonfirst degree felonies. NMSA 1978, §§ 31–18–15 and –15.1 (Repl.Pamp.1987); NMSA 1978, § 31–20–3 (Repl.Pamp.1987).

■ Next, defendant claims, without citation to any applicable authority, that he was denied due process because the transferring judge's understanding of the district court's sentencing discretion was not honored by the sentencing judge. It appears that defendant is arguing that the transferring judge believed that the district court could use its discretion in fashioning a sentence for defendant. This belief might have been correct if defendant had not been found guilty of a first degree capital felony which mandates a life sentence. It probably would have been helpful had defense counsel clarified that distinction to the transferring judge. In any event, we conclude that defendant's due process rights were not denied.

■ In defendant's final subpoint, he claims that his sentence to the adult detention center was improper since he was already serving a prior commitment at the Boy's School in Springer in an unrelated case. This court will not consider arguments on this issue because it was not raised in defendant's docketing statement and may not be raised for the first time in defendant's briefs. *State v. Smith,* 104 N.M. 329, 334, 721 P.2d 397, 402 (1986); *State v. Hoxsie,* 101 N.M. 7, 9, 677 P.2d 620, 622 (1984).

5. *The State's Plea Offer.*

Defendant claims that the prosecutor's offered plea with a mandatory minimum of twelve years was an abuse of prosecutorial discretion. Defendant presented this issue for the first time to the trial court during sentencing. The prosecutor, at that time, declared that the state was forced to go to trial because defendant did not accept the plea offer. In response, defendant argued that the state, by offering a mandatory minimum sentence, proposed an illegal plea bargain. This offer was defended by the state as a common practice in New Mexico.

In the plea offer the state was willing to accept a plea of guilty from defendant to murder in the second degree with a firearm, armed robbery in the second degree with a firearm, conspiracy in the third degree to commit armed robbery, for a total term of twelve to twenty-six years and to dismiss the first degree capital murder charge. Not until sentencing did defendant object to the offer. At that time and in his brief, defendant incorrectly characterized the offer as a plea bargain and contends that the prosecutor invaded the trial court's sentencing province. We conclude that this was not an illegal plea offer.

■ Plea bargaining has two aspects: the entering into an agreement and its acceptance by the court. Plea negotiations between defendant and the state must be governed by fair play on both sides. A defendant may enter into an agreement with the state to plead guilty to

any proper condition and the state may recommend a particular sentence to the court. The integral part of the plea bargaining process is negotiation and compromise which results in a negotiated sentence satisfying the law enforcement demands of the state and the ends of justice. *See generally* 21 Am.Jur.2d *Criminal Law* §§ 481–85 (1981). The parties thereafter submit the plea agreement proposing a particular sentence, disposition or other action to a judge for consideration. The recommendation of the state is not binding on the court. The judge may accept or reject the agreement. The court is always free to exercise its discretion at sentencing, notwithstanding that a sentence was negotiated at the time of the plea. *See* SCRA 1986, 5–304; 21 Am.Jur.2d *Criminal Law* § 484 (1981).

In the instant case, there was no prosecutorial misconduct. When the offer was made, defendant had the right to enter into negotiations with the prosecutor to reach a compromise. Instead, defendant did not attempt to negotiate, but rejected the offer. Thus, there never was a plea agreement. Even if defendant had accepted the plea offer, the prosecutor did no more than *recommend* the imposition of a particular sentence as permitted by Rule 5–304, SCRA 1986. Each recommended sentence was consistent with the sentencing guidelines set out for second- and third-degree offenses. *See* NMSA 1978, § 31–18–15 (Repl.Pamp.1987). The trial court still would have retained the right to accept or reject the plea bargain and make an independent decision regarding the appropriate sentence.

Further, the plea offer herein differs from the "open-ended" plea bargain disapproved by the Indiana Court of Appeals and relied upon by defendant to bolster his argument. *See Spalding v. State*, 165 Ind. App. 64, 330 N.E.2d 774 (1975); Gersham, *Prosecutorial Misconduct* § 7.2(c) (1987). In *Spalding*, the trial court was deprived of its sentencing discretion because the prosecutor, not the judge, determined the sentence he deemed appropriate for the charges. *Spalding*, 165 Ind.App. at 68,

330 N.E.2d at 777. In other words, if the sentence believed to be appropriate by the prosecutor was obtained upon the first charge, the remaining charges would be dismissed; otherwise, the prosecutor would continue to prosecute the subsequent charges until the minimum figure of nine years which he wanted defendant to serve was met. *Id.* The court held therein that the objectionable practice was the wholesale disposition of unrelated charges against a defendant through an "open-ended" plea bargain in which the prosecution required the imposition of a certain minimum sentence. *Id.* at 69, 330 N.E.2d at 777–78.

### 6. *Ineffective Assistance of Counsel.*

In defendant's final argument, he claims that he was denied effective assistance of counsel because the public defender's office did not timely provide him with an investigator to contact potential witnesses and because he was not granted a continuance by the trial court.

The right to be represented by counsel is a fundamental component of our criminal justice system and encompasses the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, 466 U.S. 648, 653–54, 104 S.Ct. 2039, 2043–44, 80 L.Ed.2d 657 (1984). The standard for ineffective assistance of counsel in New Mexico is whether defense counsel exercised the skill of a reasonably competent attorney. *State v. Orona*, 97 N.M. 232, 233, 638 P.2d 1077, 1078 (1982); *State v. Talley*, 103 N.M. 33, 35–36, 702 P.2d at 353, 355–56 (Ct.App.1985). Defendant has the burden of showing both the incompetence of his attorney and the proof of prejudice. *Talley*, 103 N.M. at 36, 702 P.2d at 356. Further, absent this showing by defendant, counsel is presumed competent. In considering an ineffectiveness claim, the entire proceeding must be reviewed as a whole. *Id.; see also State v. Hernandez*, 104 N.M. 268, 272, 720 P.2d 303, 307 (Ct.App.), *cert. denied*, 104 N.M. 201, 718 P.2d 1349 (1986).

The "benchmark" for judging an incompetency claim is whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063. In other words, there must be a reasonable probability that "but for" counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

The trial court has discretion in ruling on a motion for continuance and this court will not interfere with that decision absent an abuse of discretion. *State v. Tovar,* 98 N.M. 655, 658, 651 P.2d 1299, 1302 (1982). Not every restriction on an attorney's time or opportunity to investigate or otherwise prepare violates a defendant's sixth amendment right to counsel. *Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). The burden of scheduling trials which includes assembling the witnesses, lawyers and jurors all at the same time counsels against continuances except for compelling reasons. *Id.* Although access to an investigator until the morning of trial was beyond defense counsel's control, and the record indicates that one of defendant's accomplices had the benefit of at least two investigators, our review of the record does not indicate that counsel's inability to interview all potential witnesses prejudices defendant's case. To the contrary, the record sustains a conviction that defendant was well represented at trial. And, absent proof that defense counsel's representations fell below the standard of a reasonably competent attorney and that but for counsel's error, the result would have been different, counsel is presumed competent. Thus, the *Strickland* test was not satisfied and defendant received a fair trial.

The judgment of conviction is AFFIRMED.

IT IS SO ORDERED.

WALTERS and RANSOM, JJ., concur.