805 P.2d 78

STATE of New Mexico,
Plaintiff–Appellee,

v.

Richard Dennis JETT,
Defendant–Appellant.

No. 18258.

Supreme Court of New Mexico.

Feb. 4, 1991.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

Defendant Richard Dennis Jett (Jett) appeals his conviction of first degree murder of his former wife Judy Jett (Judy). We affirm.

On June 18, 1988, Jett shot and killed Judy in the parking lot of the Diamond Lil's Bar in Hobbs, New Mexico. Earlier that same evening Jett encountered Judy leaving George's Bar with Monetta Easter, a woman Jett also knew, and Steve Bush, whom Easter introduced to Judy that evening. Judy went back inside the bar while Easter told Jett to stay away from Judy. Nonetheless, he followed them to Diamond Lil's. Easter testified that when she told Jett they did not want any trouble, he hit her in the face and threatened to kill her.

Jett then drove to his house and put an unloaded shotgun and shells in his truck. He went out to buy snacks, returned home for at least one hour, and told his daughter Cheryl he was going out. He returned to Diamond Lil's, where he found Judy and Bush kissing in the parking lot. He loaded the shotgun and walked toward them, telling Bush to take his hands off Judy and Judy to get into his truck. Jett testified that Judy started walking toward his truck.

The precise sequence of events that followed is disputed. Jett testified he pointed the shotgun at Bush and tried to shoot but was prevented from doing so by having to release the safety on the gun. He claims that Judy made a grab for the shotgun and it accidentally discharged, wounding her. Jett further testified that after she fell he shot her twice more, then walked away, firing two additional shots into the ground. Bush testified there was no struggle for the shotgun and that Jett was 10–15 feet away from Judy when he fired the first shot. No other witness recalled a struggle. Judy suffered shotgun wounds in the head, the chest and the abdomen; the medical testimony was that any one of these wounds could have been fatal. Jett was apprehended as he drove away and he confessed to the shooting. Following a jury trial in Lea County, Jett was convicted of first degree murder and sentenced to life imprisonment.

Jett raises eight points on appeal. First, he argues that three actions by the court constitute reversible error: (1) The court excluded a prior consistent statement he had made, offered to rehabilitate his testimony concerning the struggle; (2) the court limited cross-examination into the possible bias of witness Bush; and (3) the court abused its discretion in excusing a

prospective juror. Next, he contends that he was denied due process and a fair trial because the State: (4) improperly read a prior consistent statement during the direct examination of witness Cheryl Jett; (5) was late in disclosing fingerprint evidence; and (6) engaged in prosecutorial misconduct. Finally, Jett claims that his conviction should be reversed due to: (7) ineffective assistance of counsel and (8) cumulative error. Each of these issues will be addressed in turn.

■ 1. *Exclusion of prior consistent statement.* Jett first argues that the court erred in refusing to admit into evidence a tape recording of a statement he made to the police. The prior statement was consistent with his testimony at trial that there had been a struggle for the shotgun and that the first shot was accidental. The statement was offered to rebut a charge of recent fabrication. Jett claims the tape was "highly relevant" to his contention of a struggle.

During Jett's cross-examination the State impeached his testimony by eliciting a prior statement it asserted was inconsistent with his claim of a struggle and tended to show that the claim was a recent fabrication. The court then conducted an *in camera* hearing. In that hearing counsel for Jett asked the court to allow one of three alternatives to place the statement before the jury: (1) playing the tape; (2) obtaining a stipulation from the state that Jett had made the prior consistent statement; or (3) eliciting from Jett that he had made a prior consistent statement and what it was. The court ruled that the third alternative would be allowed.

■ An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion, *State v. Bell*, 90 N.M. 134, 139, 560 P.2d 925, 930 (1977), and a demonstration that the error was prejudicial rather than harmless, *State v. Trujillo*, 95 N.M. 535, 541, 624 P.2d 44, 50 (1981). We see no basis for finding an abuse of discretion, since the court granted defense counsel one of his own alternative means of placing the statement in evidence.

■ Moreover, even if we were to assume for the sake of argument that the trial court erred, the error in this case was harmless. New Mexico has adopted the standard for harmless error set out by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See State v. Trujillo*, 95 N.M. at 541, 624 P.2d at 50. In *Chapman*, the Supreme Court identified the standard as "whether there is a reasonable possibility that the ... [error] might have contributed to the conviction." *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827 (improper admission of evidence).

We fail to see how the tape could have contributed to Jett's defense in any way which would have altered the outcome of the trial. Assuming the tape had been played for the jury and they had fully believed Jett's contention that a struggle preceded the first shot, that belief would not have relieved Jett from the consequences of the two subsequent shots. Regardless of what happened at the time of the first shot, it is undisputed by Jett that once Judy was wounded he then fired two additional shots into her head, chest, or abdomen. Therefore, even if he had fully established his struggle contention, his admission to the subsequent shots convincingly supports the verdict of first degree murder.

2. *Limitation of cross-examination on bias.* Jett next contends that it was reversible error for the trial court to limit his cross-examination into the possible bias of witness Bush. Under Rule 611 of the New Mexico Rules of Evidence, the trial court is vested with the authority to control the interrogation of witnesses to avoid unnecessary testimony and to protect witnesses from harassment or undue embarrassment. SCRA 1986, 11–611(A); *State v. McCarter*, 93 N.M. 708, 713, 604 P.2d 1242, 1247 (1980). "The trial court may, within its discretion, control cross-examination to insure a fair and efficient trial." *Sanchez v. State*, 103 N.M. 25, 27, 702 P.2d 345, 347 (1985).

Jett alleges that he was entitled to try to establish bias on the part of Bush, contending that he (Bush) may previously have been involved in drug trafficking and was possibly a confidential informant for the state. In an *in camera* hearing, Jett moved that the State disclose information regarding Bush's involvement in drug trafficking and status as an informant, arguing that Bush's credibility was critical and that his (Jett's) request was supported by the sixth amendment right to confrontation. The court denied the motion, on the grounds that there was no indication of drug involvement and that Bush's possible informant status was unrelated to his having witnessed a murder.

█ A trial court's ruling as to the permissible scope of cross-examination is also reviewed under the "abuse of discretion" standard. *Id.*, 103 N.M. at 29–30, 702 P.2d at 349–50. There was no evidence presented during the *in camera* hearing that could lead to the conclusion that Bush was either a drug trafficker or an informant. However, even if either had been established, the court concluded it would have no effect on the credibility of Bush's testimony as an eyewitness to an unexpected murder. Although the right of a criminal defendant to impeach a witness is important to a fair trial, we find the court's ruling reasonable, on the facts of this case. No abuse of discretion has been demonstrated.

█ Moreover, assuming the ruling was erroneous, this error too was harmless. Even if Jett had thoroughly impeached Bush for bias and the jury had completely disbelieved Bush's testimony concerning the absence of a struggle, and even if the jury had found there *was* a struggle, Jett's two subsequent shotgun blasts at Judy, lying on the ground, would remain unexplained. We cannot see a reasonable possibility that the court's refusal to permit witness Bush to be impeached for bias might have contributed to Jett's conviction.

█ 3. *Excuse of prospective juror.* Jett's third claim of abuse of discretion is that the court improperly excused prospective juror Miguel de la Cruz (de la Cruz). De la Cruz was excused by the court after he approached the judge on his own initiative to say that he was unable to understand sufficient English to serve on the jury. Although the court is vested with "wide discretion in the superintendence of the process of empaneling the jury," *Beal v. Southern Union Gas Co.*, 66 N.M. 424, 434, 349 P.2d 337, 344 (1960), allowing an unqualified juror to serve in a criminal case may constitute a constitutional violation, *State v. Gallegos*, 88 N.M. 487, 488–89, 542 P.2d 832, 834 (Ct.App.), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1975).

As stated in *Gallegos*, "It is self-evident that a juror who does not possess a working knowledge of English would be unable to serve because he cannot possibly understand the issues or evaluate the evidence to arrive at an independent judgment as to the guilt or innocence of the accused." 88 N.M. at 489, 542 P.2d at 834; *see also State v. Escamilla*, 107 N.M. 510, 760 P.2d 1276 (1988).

█ On appeal, Jett has not alleged that due to the dismissal of prospective juror de la Cruz he suffered prejudice, nor has he alleged that the jury ultimately empaneled was not impartial. De la Cruz apparently convinced the court that his understanding of English was too limited to guarantee the defendant a fair trial. Indeed, had the judge not excused de la Cruz, Jett would have had a colorable claim of prejudicial error. Since the trial court is vested with broad discretion in dismissing a juror for cause, dismissal of a prospective juror will constitute reversible error only upon a showing of manifest error or clear abuse of discretion. *State v. Isiah*, 109 N.M. 21, 30, 781 P.2d 293, 302 (1990). We find that the court acted properly.

4. *Admission of witness's prior consistent statement.* Jett contends that he was denied due process and a fair trial as a result of certain conduct by the State. First, he alleges that the State improperly read a prior consistent statement during direct examination of witness Cheryl Jett. Because there was no objection at trial, Jett asks this Court to reverse under the

doctrine of fundamental error, pursuant to SCRA 1986, 12–216 B(2).

The doctrine of fundamental error is applicable only under exceptional circumstances and solely to prevent a miscarriage of justice. *State v. Clark,* 108 N.M. 288, 297, 772 P.2d 322, 331, *cert. denied,* — U.S. ——, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989). To be fundamental, error must deprive the defendant of rights essential to his defense. *Smith v. State,* 79 N.M. 450, 453, 444 P.2d 961, 964 (1968). Of most relevance to this case, the doctrine applies only where the defendant's guilt is open to such question as would shock the conscience if the conviction were permitted to stand. *State v. Rodriguez,* 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). The doctrine is not applicable merely to excuse a failure to make a timely objection during trial. *State v. Sanchez,* 109 N.M. 313, 318, 785 P.2d 224, 229 (1989).

In light of Jett's confession as to the shooting of his former wife, it can hardly be claimed that his conviction shocks the conscience or represents a miscarriage of justice. Nor did the alleged error deprive Jett of an essential element of his defense. The alleged error was not fundamental, so it cannot be reviewed by this Court.

5. *Failure to reveal fingerprint evidence.* Jett next argues that the State failed to reveal fingerprint evidence in a timely manner. During the State's case in chief, Detective Dan Cheetham testified that although the murder weapon bore fingerprints, he was unable to identify them. Defense counsel failed to object during the testimony but claimed in chambers that the State had failed to timely reveal that there were fingerprints on the shotgun, thereby prejudicing Jett's ability to prove his struggle theory. The court ruled that the fingerprint findings were inconclusive and that the defense had failed to timely object to the testimony. Subsequently, a defense motion for mistrial was denied.

Once again, we find no abuse of discretion. The fingerprint evidence at most could have helped support Jett's contention that a struggle preceded the first shot. Even if Jett had convinced the jury on that point, it would not have absolved him of his subsequent firing of two shots after Judy was wounded. The error, if any, was harmless.

6. *Prosecutorial misconduct.* Jett's next claim is that misstatements of evidence by the prosecution demonstrated prosecutorial misconduct sufficiently prejudicial to constitute reversible error. According to Jett, the State repeatedly represented his statement to the police as "[Judy] ran to grab the gun," whereas Jett claimed he had said, "[Judy] ran and grabbed the gun." Jett argues that the State was unfairly suggesting that his testimony that she succeeded in grabbing the gun was a fabrication. Although Jett does not specify when the comments occurred, the State addresses the issue as one of the permissible scope of closing argument.

We have observed that a "trial court has wide discretion in dealing with and controlling counsel's argument to the jury and, if no abuse of this discretion or prejudice to the defendant is evident, error does not result." *State v. Pace,* 80 N.M. 364, 371, 456 P.2d 197, 204 (1969). We have also noted that the question presented on appeal where improper prosecutorial comments during closing arguments are alleged is whether the comments served to deprive the defendant of a fair trial. *State v. Ruffino,* 94 N.M. 500, 503, 612 P.2d 1311, 1314 (1980).

In this case Jett sought to establish that Judy had grabbed the gun, with the result that the gun accidentally discharged. The jury was entitled to weigh the evidence and assess the credibility of the witnesses. *State v. Vigil,* 87 N.M. 345, 350, 533 P.2d 578, 583 (1975). The court did not err in allowing counsel reasonable latitude during closing arguments. The State's characterization of the alleged statement was consistent with the sequence described by other witnesses and went to a disputed fact. We hold that the characterization did not rise to the level of prosecutorial misconduct. In addition, even had error occurred, for all of the

reasons discussed above such error would have been harmless, in light of the overwhelming evidence regarding the subsequent shots.

7. *Ineffective assistance of counsel.* Jett also asserts that he was denied effective assistance of counsel. He offers three bases for this assertion: (a) that he had different appointed attorneys over the course of his arrest and trial; (b) that his trial attorneys came into the case "too late to be fully and adequately prepared"; and (c) that as a result of (a) and (b), critical evidence (the fingerprints) was overlooked.

The right to effective legal representation is undeniably fundamental to our criminal justice system. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The standard for ineffective assistance of counsel in New Mexico is whether defense counsel exercised the skill of a reasonably competent attorney. *State v. Taylor,* 107 N.M. 66, 72, 752 P.2d 781, 787 (1988), *overruled on other grounds, Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). The defendant bears the burden of demonstrating both the incompetence of his attorney and resulting prejudice, and absent such a showing counsel is presumed competent. *State v. Taylor,* 107 N.M. at 72, 752 P.2d at 787.

Here, Jett fails even to allege specific examples of incompetence, other than the oversight of the possible fingerprint evidence. Merely objecting to a change of appointed counsel close to trial does not establish an inference of incompetence. Moreover, the one example given, the inconclusive fingerprint testimony, does not establish prejudice, since fully proving his struggle theory would not have altered the verdict. Where an alleged oversight would be harmless, it can hardly provide the basis for overturning a conviction on the ground of ineffective assistance of counsel. We find no indication that Jett's defense was in any way impaired by anything his counsel did or did not do.

8. *Cumulative error.* Jett's final point is that the cumulative effect of the errors alleged above deprived him of due process and a fair trial. Cumulative error requires reversal of a criminal conviction when the cumulative impact of irregularities during trial is so prejudicial that the defendant was denied a fair trial. *See State v. Martin,* 101 N.M. 595, 600, 686 P.2d 937, 942 (1984). However, because we find no prejudicial errors or irregularities in the points raised on appeal, there are no errors to cumulate in denial of a fair trial. *See State v. Stephens,* 99 N.M. 32, 38, 653 P.2d 863, 869 (1982).

For all of the above reasons, the conviction is affirmed.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.