This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36960**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JENNIFER JANET,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina T. Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant Jennifer Janet appeals her conviction for aggravated battery (deadly weapon), contrary to NMSA 1978 Section 30-3-5(C) (1969). On appeal, Defendant argues that (1) the district court erred in allowing the State to dismiss Defendant's underlying charge of attempted second-degree murder—rather than the aggravated battery (deadly weapon) charge—in order to cure a double jeopardy violation, and (2) Defendant was denied a fair trial based on erroneous evidentiary rulings by the district court. For the reasons set forth below, we affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the relevant historical facts of this case. We reserve discussion of specific facts where necessary to our analysis.

**{3}** Defendant was arrested on October 5, 2015, following a violent altercation with Juan Jaramillo on September 16, 2015, during which Defendant stabbed Jaramillo in the neck, back, and leg. Defendant was indicted on charges of attempted first-degree murder, aggravated battery (deadly weapon)—or, in the alternative, aggravated battery (great bodily harm)—tampering with evidence, and unlawful taking of a motor vehicle. A jury found Defendant guilty of attempted second-degree murder, as a lesser offense of her attempted first-degree murder charge, and aggravated battery (deadly weapon). She was acquitted of all other charges.

**{4}** Following her trial, Defendant filed a motion to dismiss the underlying aggravated battery (deadly weapon)[1] charge upon which the jury found her guilty, claiming that her convictions combined to violate her right to be free from double jeopardy. Defendant's motion specifically asserted that the offense of aggravated battery was subsumed within the offense of attempted second-degree murder, and, accordingly, Defendant's underlying aggravated battery charge should be dismissed. The district court held a hearing on Defendant's motion (the October 2017 hearing) during which the State acknowledged that aggravated battery and attempted second-degree murder "merged" under the facts of this case to violate principles of double jeopardy, but requested the district court dismiss the attempted second-degree murder charge, contrary to Defendant's motion. The district court permitted the State to dismiss the attempted second-degree murder charge and sentenced Defendant to a total of seven years, comprised of the three-year sentence for the aggravated battery conviction and an additional four years enhancement because Defendant qualifies as a habitual offender. This appeal followed.

**DISCUSSION**

**I.      The District Court Did Not Err in Determining the State Could Dismiss Defendant's Underlying Attempted Second-Degree Murder Charge**

**{5}** Defendant argues the district court erred in permitting the State to dismiss Defendant's attempted second-degree murder charge, claiming the aggravated battery charge should have been dismissed instead because it was subsumed within the attempted murder charge. Defendant further contends that it was within the district court's discretion—and not the State's right—to determine which charge to dismiss. The State concedes on appeal, as it did in district court, that Defendant's attempted second-degree murder and aggravated battery convictions violate double jeopardy. Therefore, we are not asked to analyze *whether* a double jeopardy violation occurred, but rather

---

[1]Hereinafter, unless otherwise noted, aggravated battery refers to aggravated battery (deadly weapon).

the relief owed to Defendant in light of the double jeopardy violation acknowledged below. We review this issue de novo, applying principles of double jeopardy as applicable to our inquiry. *See State v. Santillanes*, 2001-NMSC-018, ¶ 9, 130 N.M. 464, 27 P.3d 456 (applying de novo review to determine which of the defendant's two convictions must be vacated in order to cure double jeopardy violations).

**{6}** Defendant contends that her aggravated battery charge should have been dismissed because it was subsumed within attempted second-degree murder. In *State v. Swick*, our Supreme Court held that "the Legislature did not intend multiple punishments for attempted [first-degree] murder and aggravated battery arising from the same conduct because the latter is subsumed by the former." 2012-NMSC-018, ¶ 19, 279 P.3d 747. In vacating the defendant's conviction for aggravated battery, the *Swick* Court stated unambiguously that "the aggravated battery elements were subsumed within the attempted [first-degree] murder elements." *Id.* ¶¶ 27, 31. Here, as in *Swick*, the State offered no alternative acts that could have been the basis for Defendant's attempted second-degree murder charge other than those which already constituted the basis for her aggravated battery charge. We therefore conclude that Defendant's aggravated battery charge was subsumed within her attempted second-degree murder charge. Contrary to Defendant's argument on appeal, however, our conclusion in this regard does not resolve whether the correct charge was dismissed. Rather, while Defendant rightly asserts that aggravated battery was subsumed within attempted second-degree murder, Defendant incorrectly contends that such subsumption requires dismissal of the aggravated battery charge.

**{7}** Our double jeopardy case law is clear that when a defendant's convictions violate double jeopardy principles by imposing impermissible multiple punishments for unitary conduct, we vacate the conviction that carries the lesser punishment, regardless of whether the nature of the double jeopardy violation involves subsumption. *See Santillanes*, 2001-NMSC-018, ¶ 28 (recognizing the "general rule" that when faced with "impermissible multiple punishments," we vacate the lesser offense (internal quotation marks and citation omitted)); *see also Swick*, 2012-NMSC-018, ¶¶ 27, 29, 31 (reversing the defendant's aggravated battery conviction because it carried a shorter sentence than attempted first-degree murder and confirming that where a double description double jeopardy violation occurs because one conviction is subsumed within another, we "vacate the convictions that carry the lesser punishment"). Indeed, the *Swick* Court did not vacate the defendant's aggravated battery charged because it was subsumed, but rather because the aggravated battery charge carried the lesser punishment of a three-year sentence as compared to the nine-year sentence carried by attempted first-degree murder. *Id.* ¶ 29. In contrast, Defendant's charges here each carry identical three-year sentences. *See* NMSA 1978, § 30-2-1(B) (1994) (stating that second-degree murder is a second-degree felony); *see also* NMSA 1978, § 30-28-1(B) (1963) (explaining that when a defendant attempts to commit a felony, "if the crime attempted is a second[-]degree felony, the person committing such attempt is guilty of a third[-]degree felony"); NMSA 1978, § 30-3-5(C) (1969) ("Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third-degree

felony."); NMSA 1978, § 31-18-15(A)(11) (2019) (explaining that a person who is convicted of a noncapital felony will be sentenced to three years for a third-degree felony).

**{8}** There is no clear rule dictating which of Defendant's underlying convictions should be vacated. Indeed, our appellate courts have been silent on the issue of how we should determine which charge to dismiss in light of an undisputed double jeopardy violation resulting in identical sentences. *See State v. Porter*, 2020-NMSC-020, ¶ 42, 476 P.3d 1201 (declining to determine which of the defendant's two convictions must be vacated in order to cure a double jeopardy violation); *see also State v. Mercer*, 2005-NMCA-023, ¶ 29, 137 N.M. 36, 106 P.3d 1283 (expressing "no opinion as to which" of the convictions should be vacated when the convictions are for "the same degree felonies"). While Defendant's arguments present an unresolved question, this Court operates pursuant to a "presumption of correctness" in favor of the district court's rulings, and it is the "[d]efendant's burden on appeal to demonstrate any claimed error below." *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (internal quotation marks and citation omitted). Here, Defendant has not met her burden of demonstrating that the district court erred in accepting the State's dismissal of the attempted second-degree murder charge rather than that of aggravated battery. We explain.

**{9}** Defendant contends that it was the district court that "proposed that the State dismiss the attempted second[-]degree murder because the State wanted to limit [Defendant's] ability to accrue 'good time' pursuant to the Earned Meritorious Deductions Act (EMDA)[,]" which designates aggravated battery as a "serious violent offense," a designation which would prevent Defendant from earning meritorious deductions for her time served on that conviction. *See* NMSA 1978, § 33-2-34(L)(4)(c) (2015) (defining third-degree aggravated battery—included aggravated battery (deadly weapon)—as a "serious violent offense"); *see also* § 33-2-34(F)(3) (stating that "[a] prisoner is not eligible to earn meritorious deductions if the prisoner . . . is confined for committing a serious violent offense"). Defendant's contention in this regard is stated in its brief in chief without citation to the record. When a party fails to provide proper citation to the record in support of its argument, our ability to review such argument is limited. *See Chan v. Montoya*, 2011-NMCA-072, 150 N.M. 44, 256 P.3d 987 ("[I]t is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *see also Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); Rule12-318(A)(3) NMRA (requiring briefs in chief to contain "a summary of the facts relevant to the issues presented for review[, ]which summary shall contain citations to the record proper, transcripts of proceedings or exhibits supporting each factual representation").

**{10}** Moreover, our own review of the October 2017 hearing—which is presumably where this "proposal" by the district court would have taken place—reveals that the only time the court mentioned the EMDA or invoked the designation of aggravated battery as

a serious violent offense was near the end of the hearing when the district court stated, "You know, we have to have a separate hearing for the SVO," meaning the serious violent offense. In response, the State clarified that aggravated battery was among the enumerated offenses that are automatically considered serious violent offenses and thus do not require a determination by the district court. *See* NMSA 1978, § 33-2-34(L)(4)(c) (2015). There was no further discussion of the EMDA, the designation of aggravated battery as a serious violent offense, or any intent to limit Defendant's potential to earn meritorious deductions.

**{11}** Defendant implies but does not thoroughly argue that the district court and the State impermissibly relied on the aggravated battery charge's designation as a serious violent offense in order to rationalize dismissal of the other charge, suggesting that the State tried to use the serious violent offense designation as proof of the Legislature's intent to punish aggravated battery more severely and for a longer time than attempted second-degree murder. Because, however, the argument Defendant seems to be making in this regard is undeveloped and unsupported by either citation to the record or the record itself, we decline to address it further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *see also Durham v. Guest*, 2009-NMSC-007, ¶ 10, 145 N.M. 694, 204 P.3d 19 (stating that "reference to facts not before the district court and not in the record is inappropriate and a violation of our Rules of Appellate Procedure"). Because Defendant has failed to meet her duty on appeal, we cannot hold that the district court erred in allowing the dismissal of the attempted second-degree murder charge.

**{12}** We briefly address Defendant's remaining argument that the district court erred in determining that it lacked discretion to decide which charge to dismiss and, instead, permitted the State to dismiss its preferred charge. Defendant misinterprets the record it relies on in support of this argument, incorrectly stating that the district court "determined it was without discretion" to decide which charge should be dismissed. The district court made no such proclamation. Rather, it heard argument from the parties regarding which charge should be dismissed in light of the identical sentences conveyed by each and agreed with the State's position that the appropriate charge to dismiss was the one selected by the State. Defendant baldly states that "when the degree of felony between the two convictions is identical and the statutory sentences provided for each offense are equal, discretion lies with the sentencing court to determine which conviction should be vacated." If correct, the record in fact reflects that the district court did precisely what Defendant suggests is proper: determined, based on argument presented by parties, that the attempted second-degree murder charge should be dismissed by the State. *See Porter*, 2020-NMSC-020, ¶ 42 (stating the district court has discretion to determine which conviction should be vacated when felonies carry equal statutory sentences). For these reasons, we determine that the district court did not err in allowing the State to dismiss the attempted murder charge.

## II. The District Court's Evidentiary Rulings and Questioning of a Witness Were Not in Error and Did Not Deny Defendant a Fair Trial

**{13}** Defendant argues the district court's erroneous rulings on several evidentiary issues denied Defendant a fair trial. Specifically, Defendant contends the district court erred by (1) excluding a police witness's testimony as it related to the condition of Jaramillo's home; (2) limiting Defendant's testimony based on sustained objections to hearsay; and (3) limiting defense counsel's attempted impeachments of Jaramillo. Defendant further claims the district court improperly "took over" questioning during defense counsel's examination of a witness in a manner that undermined the fundamental fairness of the trial.

**{14}** We review evidentiary decisions by the district court for abuse of discretion. *State v. Sanchez*, 2008-NMSC-066, ¶ 12, 145 N.M. 311, 198 P.3d 337 ("The district court has discretion to determine the admissibility of evidence, and we will not reverse the court's order absent an abuse of discretion."). We apply a de novo review when considering whether the district court "applied the correct evidentiary rule or standard." *State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Abuse of discretion by the district court can also occur "when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913. In order to successfully claim the district court abused its discretion, a criminal defendant "must establish not only an abuse of discretion, but also that the abuse was to the injury of the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 (internal quotation marks and citation omitted). "An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion, and a demonstration that the error was prejudicial rather than harmless[.]" *State v. Jett*, 1991-NMSC-011, ¶ 8, 111 N.M. 309, 805 P.2d 78 (citation omitted).

## A. The District Court Exclusion of a Police Witness's Testimony as It Related to the Condition of Jaramillo's Home Was Harmless Error

**{15}** Defendant argues that the district court erred in disallowing a defense witness from testifying about the "messy and unsanitary" condition of Jaramillo's home. Alison Nodes, a crime scene specialist with the Albuquerque Police Department called to testify at trial by Defendant, testified that she provided Tyvek suits to those investigating the scene at Jaramillo's residence. When asked whether the use of Tyvek suits is standard protocol, Nodes replied, "Not typically, no." Defense counsel then asked Nodes why she used Tyvek suits for the investigation at Jaramillo's house, and she said, "Because of the believed conditions of the house," which included "[t]he possibility of bed bugs, blood, and . . . uncleanliness in general." The State then objected, arguing

that testimony regarding the condition of Jaramillo's house was not relevant, with the exception of the blood found at the scene. Defense counsel argued the condition of Jaramillo's house was relevant because it weighed against Jaramillo's claims that he offered Defendant a safe place to stay. The district court remained unpersuaded, admonished defense counsel not to elicit testimony about the general conditions of the Jaramillo's house and directed the jury to disregard any comment about the condition of Jaramillo's house other than the blood found at the scene. Defendant now argues that the exclusion of Nodes' testimony precluded Defendant from asserting the defense theory that "she was trying to escape from an unpleasant environment where she felt and was in fact unsafe." The State answers in pertinent part that Nodes' testimony was properly excluded because it was cumulative. We agree with the State and explain.

**{16}** All relevant evidence is generally admissible, unless otherwise provided by law, and evidence that is not relevant is not admissible. *See* Rule 11-402 NMRA. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA (emphasis added). "Any doubt whether the evidence is relevant should be resolved in favor of admissibility." *State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845. In light of the presumption favoring admissibility, there can be little doubt that testimony regarding the condition of Jaramillo's home could be relevant to a defense regarding the unsafe nature of Jaramillo's home. Because Nodes' testimony was relevant, the district court's exclusion thereof constituted a "misapprehension of the law" and we therefore conclude that the district court abused its discretion. *See Aragon*, 2003-NMCA-126, ¶ 9. However, abuse of discretion by the district court does not constitute reversible error without proof that the defendant was prejudiced by the court's error. *Jett*, 1991-NMSC-011, ¶ 8.

**{17}** Here, Defendant testified at length about the messy and unsanitary condition of Jaramillo's home, stating that "there was clutter floor to roof," there was animal feces on the floor and furniture, the messy state of the home was "shocking," and the home "did not seem livable." Moreover, additional witnesses testified about the state of Jaramillo's home prior to Nodes' testimony: Jaramillo, himself, testified that his home had previously been condemned but that it had since been "cleaned up;" Officer Paul Bellgardt testified that Jaramillo's home "was a mess;" Eric Beckstrom testified that Jaramillo's home was messy and in a state of disarray; and Detective Lisa Barrick-Neil testified that Jaramillo's home was "filthy."

**{18}** Rule 11-611(A)(2) NMRA permits the district court "to exercise reasonable control over the mode and order of questioning witnesses and presenting evidence so as to avoid wasting time." Additionally, Rule 11-403 NMRA states that the district court "may exclude relevant evidence if its probative value is substantially outweighed by . . . needlessly presenting cumulative evidence." Because the intended content of Nodes' excluded testimony was elicited through additional witnesses, thus rendering it cumulative, we hold that Defendant was not prejudiced by the district court's limitation thereof, and the district court's abuse of discretion in excluding otherwise relevant evidence was harmless, rather than reversible, error.

**B.    The District Court Did Not Abuse Its Discretion in Limiting Defendant's Testimony Based on Sustained Objections as to Hearsay**

**{19}**    Defendant argues that the district court prevented Defendant from presenting a cohesive defense because it erroneously sustained numerous objections as to hearsay and speculation. Defendant's briefing details an extensive series of the district court's repeated admonishments to both defense counsel and Defendant to avoid testimony of a hearsay nature and that amounts to speculation. Defendant's assertions suggest as well that Defendant was mistreated by the district court in such a way that the jury was prejudiced against her.

**{20}**    To establish her claim of reversible error, Defendant addresses numerous instances in which she claims the district court erroneously sustained the State's objections to hearsay. Hearsay is an out-of-court statement, which is later offered in evidence to prove the truth of the matter asserted. *See* Rule 11-801(C) NMRA. Under our rules of evidence, hearsay is inadmissible unless a valid exception applies. Rule 11-802 NMRA. Defendant first contends that the district court erred in sustaining the State's objection to hearsay following Defendant's testimony regarding things Jaramillo said to Defendant that were sexually suggestive. Defendant does not argue, however, that Jaramillo's statements fit within any exception to the hearsay rule; moreover, the district court merely directed defense counsel and Defendant to avoid testimony of a hearsay nature. We cannot assign error where the only action by the district court was a request that Defendant adhere to our Rules of Evidence, and where Defendant fails to articulate with specificity why the testimony she complains was excluded was instead admissible.

**{21}**    Defendant also claims the district court erroneously sustained the State's objection to hearsay following Defendant's testimony about taking a phone from Jaramillo, in which she stated that she took the phone from Jaramillo because he was "on [it] telling someone something—" at which point the district court sustained a hearsay objection by the State.

**{22}**    Defendant later testified that she "took the phone and tried to inform [the caller] that [what Jaramillo said] was inaccurate" at which point the State objected to hearsay. The district court asked defense counsel to clarify the exception to hearsay that applied to Defendant's out-of-court statement, and after approaching for a bench conference, defense counsel explained that Defendant's testimony regarding Jaramillo's phone call was not being offered for its truth, but rather as proof of her state of mind at the time. The district court advised defense counsel how Defendant would be permitted to testify as to her state of mind and Defendant's testimony continued.

**{23}**    Defendant argues that her unfinished statements about taking Jaramillo's phone were not intended to be offered for the truth of the matter asserted but were intended to explain that she took Jaramillo's phone because Jaramillo was on the line saying that Defendant "had malicious intent" towards the caller, and that when she took the phone it was with the intention of clarifying to the caller that Jaramillo's statements were not true.

Defendant cites *State v. Rosales* for the propositions that "[e]vidence is not hearsay if admitted as circumstantial evidence of the motive of the listener[,]" and that a statement is admissible when it is intended "to show the effect of the statements upon" Defendant. 2004-NMSC-022, ¶ 17, 136 N.M. 25, 94 P.3d 768 (internal quotation marks and citation omitted). We are unpersuaded.

**{24}** Here, the district court sustained the State's objections after repeatedly reminding defense counsel and Defendant to avoid hearsay. Not only did the district court continually advise defense counsel and Defendant as to its expectation that Defendant refrain from hearsay testimony, the district court also considered and rejected defense counsel's argument that Defendant's statements about the phone were offered not for the truth therein, but rather to prove her state of mind at the time. We will not find an abuse of discretion where it was reasonable for the district court to believe testimony was being offered for a purpose other than that claimed by a defendant. *See State v. Maxwell*, 2016-NMCA-082, ¶ 13, 384 P.3d 116 (explaining that although the defendant argued that testimony "was *not* offered for the truth of the matter asserted, the district court understood the testimony as *being* offered for the truth of the matter asserted[,]" and did not abuse its discretion in excluding the testimony). Nothing in Defendant's argument convinces us that it was unreasonable for the district court to interpret Defendant's intended testimony as hearsay, especially when the district court considered and rejected defense counsel's justification for the hearsay to be admitted through an exception. *See id.* (explaining that because the district court's interpretation of the nature of the testimony was not "unreasonable, untenable, or unjustified by reason[,]" the district court did not abuse its discretion in excluding the testimony in question). We therefore conclude the district court did not abuse its discretion in sustaining the State's objections and curtailing what it perceived to be hearsay testimony.

**{25}** Also regarding hearsay, Defendant asserts that the district court erroneously sustained the State's objection following Defendant's testimony about an incident in which Jaramillo attempted to hit Defendant with his vehicle while intoxicated. Defendant testified that she tried to prevent Jaramillo from driving and that "while crossing in front his vehicle, to try to reason with him about not driving in that condition, statements were made to running me over if I was not compliant." The State objected to hearsay and the district court ordered the last portion of Defendant's testimony to be struck from the record, directing the jury to disregard it.

**{26}** Defendant argues that her testimony about the vehicle incident was offered to prove that Jaramillo knew Defendant was in front of his vehicle when he drove towards her. Defendant asserts that "statements meant to show knowledge are not being admitted for their truth[,]" again citing *Rosales*, 2004-NMSC-022, ¶ 16. Defendant misconstrues *Rosales* in this regard, as the cited provision explains that "[e]xtrajudicial statements . . . may properly be received into evidence, not for the truth of the assertions therein contained, or the veracity of the out-of-court declarant, but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, motive, effect *on the hearer or reader*, and many others." *Id.*

(emphasis added) (alteration, internal quotation marks, and citation omitted). Here, under Defendant's theory, Defendant's testimony about Jaramillo's statements of intent to run her over with his vehicle was offered to prove that Jaramillo knew Defendant was in front of the vehicle. Under *Rosales*, however, Defendant's testimony would be admissible only in order to show effect on Defendant, since she was the *hearer* of the original statements by Jaramillo. *Id.* Moreover, even assuming, without deciding, that we agreed with Defendant's characterization of Defendant's testimony in this regard, we would nonetheless be unable to conclude that the district court abused its discretion because the district court's decision was not "unreasonable, untenable, or unjustified by reason[.]" *Maxwell*, 2016-NMCA-082, ¶ 13.

**{27}** Defendant lastly addresses two rulings related to the State's objections to speculation. Our rules of evidence require a lay witness's opinion testimony to be "rationally based on the witness's perception" in order to avoid speculation. Rule 11-701(A) NMRA. Defendant argues the district court erred in further limiting her testimony about the vehicle incident. Following the State's objections, the district court asked defense counsel whether Defendant had knowledge of the facts to which she was about to testify and directed defense counsel to rephrase the question in order to avoid a speculative answer by Defendant. Defendant argues as well that the district court erred in excluding Defendant's testimony that she "believed [Jaramillo] was going to" feed her spoiled meat, but Defendant offered no testimony that proved her personal knowledge of Jaramillo's intent to do so. We find no error in the district court exercising its discretion by limiting speculative testimony to ensure that Defendant's testimony was rationally based on Defendant's perception. *See* Rule 11-701 NMRA. We therefore hold that the district court did not err in limiting and excluding the portions of Defendant's testimony that constituted impermissible hearsay and speculation.

**C.      The District Court Did Not Err in Limiting Defense Counsel's Attempted Impeachments of Jaramillo**

**{28}** Defendant argues the district court erred in limiting defense counsel's attempts to impeach Jaramillo's prior inconsistent statements. Defense counsel attempted to impeach Jaramillo's testimony by asking Detective Lisa Neil about Jaramillo's statements to him in the hospital following the stabbing incident. Specifically, defense counsel asked Detective Neil whether Jaramillo told her that he had Defendant's mother's phone number saved in his cell phone, in order to refute Jaramillo's testimony that he had only known Defendant for a few days prior to the stabbing incident. The State objected on hearsay grounds and the parties approached for a bench conference wherein defense counsel explained that Detective Neil's testimony was being offered for impeachment purposes. The district court stated that the testimony constituted impermissible hearsay and that the testimony violated Rule 11-613 because Jaramillo, having already completed his testimony, would not be able to respond to and explain the inconsistency. *See* Rule 11-613(B) NMRA ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.").

**{29}** Despite these contentions, Defendant acknowledges that a 911 call recording admitted into evidence by stipulation contained statements from Jaramillo that were inconsistent with his testimony and that defense counsel was able to elicit testimony from additional witnesses who testified as to Jaramillo's inconsistent statements.

**{30}** Because the district court has wide discretion to determine the admissibility of evidence, we cannot find error in the district court's reasonable adherence to Rule 11-613 when limiting defense counsel's attempt to impeach Jaramillo through extrinsic evidence provided by Detective Neil's testimony. *See Sanchez*, 2008-NMSC-066, ¶ 12. Moreover, because defense counsel was able to elicit prior inconsistent statements from Jaramillo through other evidence, there can be no meaningful prejudice against Defendant derived from any of the district court's evidentiary rulings regarding this issue. *See Jett*, 1991-NMSC-011, ¶ 8. Therefore, we hold the district court did not err in limiting defense counsel's impeachment efforts.

### D.    The District Court Did Not Err in Directly Questioning a Defense Witness

**{31}** Defendant argues the district court erred by intervening in defense counsel's examination of Nodes. Rule 11-614(B) NMRA permits the district court to "examine a witness regardless of who calls the witness." The district court "is more than a mere umpire or moderator, and [it] may properly propound questions to the witnesses, so long as . . . [it] displays no bias against or favor for either of the litigants." *State v. Sedillo*, 1966-NMSC-093, ¶ 10, 76 N.M. 273, 414 P.2d 500.

**{32}** Here, the district court's questions to Nodes displayed no bias and clarified the facts of her testimony, first in regard to the use of Tyvek suits and second in regard to the process of collecting fingerprint sampled. While "[e]xtensive and persistent questioning by the trial judge can give the impression to the jury that the judge favors one side over the other," *State v. Paiz*, 1999-NMCA-104, ¶ 18, 127 N.M. 776, 987 P.2d 1163, the district court's questioning here was limited to two short instances and did not express favor or bias towards the State. Indeed, a "trial judge may question witnesses to clarify testimony for the jury or to bring out all of the facts in order to ascertain the truth." *Id.* ¶ 17. Concluding that district court's limited questioning of Nodes constituted neither bias nor pervasive, prolonged interference in defense counsel's examination, we hold the district court did not err in this regard.

### E.    No Cumulative Error Occurred

**{33}** To the extent Defendant argues the district court's evidentiary rulings and questioning of a defense witness denied Defendant a fair trial and resulted in cumulative error, we are unpersuaded. Where, as here, there are no errors by the district court, there can be no cumulative error. *See State v. Aragon*, 1999-NMCA-060, ¶ 19 (explaining that in the absence of any error by the district court "there is no cumulative error").

**CONCLUSION**

**{34}** For the reasons stated above, we affirm.

**{35}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**