875 P.2d 400

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Charles SELLERS, Defendant–Appellant.**

**No. 14490.**

Court of Appeals of New Mexico.

April 7, 1994.

Certiorari Denied May 24, 1994.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Chief Judge.

Defendant appeals from a judgment entered after a jury trial convicting him of one count of trafficking in cocaine, a second-degree felony, contrary to NMSA 1978, Sections 30–31–20(A)(2) and (B)(1) (Repl. Pamp.1989), and one count of conspiracy to traffic cocaine, a third-degree felony, contrary to NMSA 1978, Sections 30–28–2 (Repl. Pamp.1984) and 30–31–20. On appeal, Defendant raises four issues: (1) the jury was not instructed properly on his entrapment defense; (2) he was entitled to a directed verdict on the trafficking count because he established entrapment as a matter of law; (3) there was insufficient evidence to support the conspiracy-to-traffic count; and (4) he was denied a fair trial by prosecutorial misconduct during closing argument. We affirm.

## FACTS

At trial Kel Smith testified that he had five felony convictions for check forgery and had been in prison four times. He became a police informant and was placed with undercover narcotics agent Carl Work in Alamogordo. By putting out the word that he had buyers, Smith found people wanting to sell drugs. Smith used that information to arrange for Work's drug buys and was paid $400 for each transaction.

Smith and Defendant have been close friends since growing up together in Las Cruces. They are both in their forties. When Smith moved to Alamogordo the two men visited there and in Las Cruces, staying at each other's houses. According to Smith, he had put out the word that he had a buyer with money, and Defendant approached him in order to make some of the money. According to Defendant, however, Smith first approached him about the deal, telling him that Smith was going to sell some cocaine, but the buyer did not want Smith to handle the money because of prior drug problems. Defendant testified that he twice agreed, when asked, to do Smith a favor by participating in a drug deal, because they had been friends for a long time.

Smith set up the first buy and drove Defendant to meet Work, who then gave Defendant $950 for an ounce of cocaine. Next, either Defendant or Smith acquired the cocaine, and the two of them went back to give it to Work. Smith and Defendant agree that one gave the other some of the cocaine for his participation in this and the other deals, but each claims he was the recipient and the other was the person who acquired the cocaine. Both also agree that Defendant had never sold cocaine prior to that day.

Smith said he twice accompanied Defendant in dealing with Work, but Work and Defendant agreed that there were three deals. The second deal was basically a repeat of the first. Defendant and Smith had different versions of the third deal.

Work testified that on August 8, 1991, he discussed purchasing cocaine with Jerry Holsome, a friend of theirs whom Smith had introduced to Work. Work gave Holsome money to purchase cocaine. Work became extremely concerned when Holsome did not return with the cocaine that same day, so he told Smith that if Smith could not get Holsome to deliver the cocaine, Smith was going to have to take Work to find Holsome. Work testified that on the following day, Defendant delivered to him the cocaine he had asked Holsome to purchase. Work and Defendant discussed the fact the delivery was "light," and Defendant said that he "would see what he could do" to remedy the problem.

Smith testified he was at Holsome's house when Holsome went into another room and called Defendant, asking him to make a drug delivery. Defendant arrived shortly thereafter. On cross-examination Smith admitted that he neither heard nor saw Holsome make

the call. Smith saw Holsome give Defendant a package of cocaine and heard Holsome ask Defendant to deliver it to Work. Smith drove Defendant to deliver the cocaine.

Defendant claims that he showed up at Holsome's house simply because he decided to stop by to visit his friend. Defendant's version has Smith giving Defendant a package, asking him to deliver it to Work, and Smith driving him to make the delivery.

Defendant was subsequently charged by grand jury indictment with three counts of trafficking cocaine and one count of conspiracy to traffic cocaine. He was acquitted of two counts of trafficking on the basis of the first two buys. We discuss below each of the issues Defendant raises, beginning with the jury instructions.

## ENTRAPMENT JURY INSTRUCTIONS

New Mexico recognizes two entrapment defenses: one focuses on improper inducements used by the police (objective); the other focuses on the defendant's lack of predisposition to commit the crime charged (subjective). *Baca v. State,* 106 N.M. 338, 341, 742 P.2d 1043, 1046 (1987). Defendant proposed jury instructions based on *Baca,* which the trial court rejected. The instruction given stated:

> Evidence has been presented that the defendant was induced to commit the crime by law enforcement officials or their agents using unfair methods of persuasion that created a substantial risk that the crime would be committed by a reasonable person in defendant's circumstances who was not otherwise ready and willing to commit the crime. For you to find the defendant guilty, the state must prove to your satisfaction beyond a reasonable doubt that the defendant was not induced to commit the crime by such methods.

This instruction is the one suggested in *State v. Sheetz,* 113 N.M. 324, 329, 825 P.2d 614, 619 (Ct.App.1991).

Defendant argues that the instruction given misstated New Mexico law by injecting a predisposition factor into the law of objective entrapment. The instruction is incorrect, according to Defendant, because it contains language stating that the unfair methods of persuasion must create "'a substantial risk that the crime would be committed by a reasonable person in defendant's circumstances who was not otherwise ready and willing to commit the crime.'" We disagree for two reasons.

First, as the State has argued, the instruction provides guidance for the jury by articulating an appropriate "'reasonable person'" standard. Most jurors are not likely to have been in similar circumstances and thus might not naturally imagine that a reasonable person would be in such circumstances. Thus, the jury should be reminded to consider the effect of police activity on a reasonable, law-abiding person. *People v. Barraza,* 23 Cal.3d 675, 153 Cal.Rptr. 459, 467, 591 P.2d 947, 955 (1979) (en banc).

Second, the objective test, according to Justice Frankfurter, "shifts attention from the record and predisposition of the particular defendant to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime." *Sherman v. United States,* 356 U.S. 369, 384, 78 S.Ct. 819, 826, 2 L.Ed.2d 848 (1958). Simply stopping the instruction after "reasonable person in defendant's circumstances" would not be satisfactory because such an instruction would bar police conduct that would induce only those *who intended to commit the crime and were* simply awaiting an opportunity. The language, "who was not otherwise ready and willing to commit the crime," does not shift the focus to the defendant, but rather provides the jury the remainder of the necessary framework within which to assess the police action.

The language of the *Sheetz* instruction finds support in commentary explaining the Model Penal Code's adoption of the objective standard. *Model Penal Code* § 2.13(1)(b) (1985). In explaining the objective theory, the Code states:

> For most methods of inducement or persuasion, the crucial inquiry under Subsection (1)(b) is whether they create a substantial risk that offenses will be committed by persons other than those who are ready to commit them. The main criterion

648

for evaluating the propriety of police methods is, therefore, the likely effect of such methods on law-abiding persons, and the propensities of the particular defendant are irrelevant.

*Id.* commentary 3 at 411. Furthermore, a footnote to this commentary states that even though the objective defense requires evaluation of police conduct rather than of a defendant's predisposition, such an evaluation must consider surrounding circumstances, and this sometimes includes defendant's prior activities. *Id.,* 356 U.S. at 411–12 n. 17, 78 S.Ct. at 879–80 n. 17.

The language from *Sheetz* instructs the jury to look at the activities of the police; it does not require the jury to make a determination as to this specific defendant's predisposition, or lack thereof, to traffic cocaine. Rather, the language provides the jury with handles by which to grasp the problem presented when a defendant raises objective entrapment. The language should assist the jury in reaching an appropriate resolution of the factual issues with which they are charged when asked to determine whether "the police exceeded the standards of proper investigation." *Baca,* 106 N.M. at 341, 742 P.2d at 1046. That is all the instruction can be expected to accomplish. *See People v. Grant,* 165 Cal.App.3d 496, 211 Cal.Rptr. 343, 345–46 (Ct.App.1985). *See generally* The Honorable Leslie C. Smith, "Entrapment," Vol. 32, No. 50, SBB 6, 7 (Dec. 16, 1993), U.J.I. 14–5160 (discussing the proposed new instruction on objective entrapment). We address the second and third issues next and together, because they both involve sufficiency of the evidence.

## SUFFICIENCY OF THE EVIDENCE

■ Defendant's second issue is that he was entrapped as a matter of law and that the trial court erred in denying his motion for a directed verdict on all trafficking counts. In resolving a motion for directed verdict, the trial court had to determine whether to believe Defendant regarding the incidents of cocaine trafficking. *See State v. Savage,* 115 N.M. 250, 254, 849 P.2d 1073, 1077 (Ct.App.1992), *cert. quashed,* 115 N.M. 409, 852 P.2d 682 (1993). In this case there is conflicting testimony going to the entrap-

ment issue. For example, Defendant and Smith each testified that it was the other who initiated Defendant's involvement in the trafficking. There was also a question regarding whether there was a government agent on each side of the transactions (did Smith or Defendant acquire the cocaine to sell to Work). Thus, there were questions of fact, including Defendant's credibility, which required that the case go to the jury. *Sheetz,* 113 N.M. at 326, 825 P.2d at 616.

■ Defendant also disputes the sufficiency of the evidence offered to prove conspiracy to traffic cocaine. The State has the burden of proving beyond a reasonable doubt each element of the crime. *State v. Duran,* 107 N.M. 603, 605, 762 P.2d 890, 892 (1988). Defendant contends that the State failed to meet that burden as to the conspiracy charge. We must determine whether the evidence, either direct or circumstantial, is sufficient to show an agreement between Defendant and Holsome to traffic cocaine. *See State v. Ross,* 86 N.M. 212, 214, 521 P.2d 1161, 1163 (Ct.App.1974). This agreement can be in the form of an implied understanding and can be inferred from facts and circumstances showing that the parties united to accomplish a crime. *Id.* When determining whether there is sufficient evidence to support an essential element of a crime or a criminal conviction, this Court must view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

■ The State presented evidence through Smith and Work regarding Defendant's interactions with Holsome. The evidence supported an inference that Holsome called Defendant and, upon his arrival at Holsome's, that Defendant agreed to deliver the cocaine to Work. Defendant's statement that he would see what he could do to remedy the "light" delivery was additional evidence upon which the jury was entitled to rely in finding the requisite agreement. Defendant presented conflicting testimony, but the evidence presented by the State was sufficient to support the jury's conviction of Defendant on charges of conspiracy to traffic

cocaine. *See* §§ 30–28–2(A) & 30–31–20(A)(2).

## CLOSING ARGUMENT

Finally, Defendant asserts that his rights to due process and to an impartial jury were violated by the prosecutor's improper closing remarks. Defendant moved for a new trial, claiming that the jury was not properly instructed and that the prosecutor's remarks, either individually or cumulatively, resulted in fundamental constitutional error. The trial court denied Defendant's motion.

■■■■ Prosecutors are allowed reasonable latitude in closing argument. *State v. Jett,* 111 N.M. 309, 314, 805 P.2d 78, 83 (1991). Such latitude, however, does not negate the requirement that the prosecutor's closing remarks be based on evidence or be in response to defendant's argument. *State v. Taylor,* 104 N.M. 88, 94, 717 P.2d 64, 70 (Ct.App.), *cert. denied,* 103 N.M. 798, 715 P.2d 71 (1986). Nor can the prosecutor misstate the law to the jury. *State v. Gonzales,* 105 N.M. 238, 242, 731 P.2d 381, 385 (Ct.App. 1986), *cert. quashed,* 105 N.M. 211, 730 P.2d 1193 (1987). If the prosecutor's closing comments were inappropriate, Defendant must show that the comments were prejudicial and prevented him from receiving a fair trial in order to prevail on appeal. *Taylor,* 104 N.M. at 95, 717 P.2d at 71.

Defendant lists specific comments that he argues constitute reversible error. He contends that the first two comments were not supported by the evidence. He also challenges two comments as misstating the burden of proof and another as an improper reference to the prosecutor's authority. First we consider the individual comments, then we consider the remarks as a whole.

The prosecutor noted in closing argument that Defendant cares for his invalid mother "when he's not at The Corner partying with his friends and when he's not doing cocaine with Jerry Holsome, and when he's not engaging in a whole variety of other illegal activities." Defense counsel objected to that statement, and the trial court sustained the objection. The State argues that there was evidence presented that Defendant partied at The Corner and used cocaine with Jerry Holsome, and that the comment regarding other illegal activities was in reference to the trafficking and conspiracy charges at issue in this trial. We agree.

■■■ The prosecutor made a second reference, to "known drug traffickers." The whole exchange before the jury was as follows:

Prosecutor: You cannot allow known drug traffickers who make hand-to-hand sales to agents (unintelligible) . . .

Defense: Objection, your honor.

Judge: Sustained.

Defense: My client's not a known drug trafficker.

Prosecutor: You cannot find an individual in this particular case, who has admittedly engaged in drug trafficking, to be found not guilty. That's what the laws are all about.

The trial court offered to admonish the jury to disregard the prosecutor's comments, but Defendant declined the offer. The court then invited Defendant to cure the matters during closing argument to the jury.

The reference to "known drug traffickers" apparently depended on Defendant's acknowledgment that he participated in the first two buys. The trial court properly sustained the objection, and defense counsel properly argued in closing that there was no evidence presented that Defendant had ever trafficked drugs in the past, and that in the present case he contended he had been entrapped to serve as a conduit in a circular drug transaction. However, we do not believe Defendant has shown prejudice sufficient to require reversal. That is because Defendant must show that the comments prevented him from receiving a fair trial. The trial court's decision to sustain the objection and its subsequent offer to admonish the jury would substantially reduce the possibility of prejudice to Defendant. Also, the prosecutor's follow-up statement indicated to the jury that he meant "admitted drug trafficker" when he said "known drug trafficker," thus further greatly diminishing the possibility that the jury would infer that the prosecutor knew about trafficking by Defendant that

was not in evidence at trial. On the state of this record, the trial court was within its discretion in determining that the prosecutor had worded his remarks poorly and that sustaining the objection and offering to admonish the jury were adequate remedies.

■■■■■ Appellate review provides a very limited opportunity for relief from poorly worded remarks, and the trial court's power to grant a new trial depends on the trial court being persuaded that due process was denied. In the end, the most important protection the law affords defendants against prosecutorial misconduct is the prosecutor's continued awareness and conscientious execution of his or her responsibility as a representative of the State.

■■■■ Two comments made during closing argument concerned the burden of proof. Those statements are contained in the following exchange:

Prosecution: Now the defendant has an obvious reason for coming up with this story, a very obvious reason. He's going to be found guilty if his story isn't believable or if he can't come up with something to rebut the obvious testimony.

Defense: Objection, your honor, I believe that he's misstating the burden.

Prosecution: The burden is on the state. There's no doubt about that. The burden is on the state to show the jury, a unanimous jury, beyond a reasonable doubt, that the defendant committed the crime, and that he was not induced by a devious and conniving and cunning Kel Smith, and that he wasn't otherwise predisposed to commit the crime. Now what that means is, if you believe that, what it all boils down to when you really get down to it is if you believe the defendant carte blanche, if you believe every single word he says then he's entitled to the entrapment defense and you're entitled to find him not guilty.

Defense: Objection, your honor. I believe he's still misstating it. You don't have to believe everything that the defendant says.

The prosecutor's statement to the jury that they have to believe every single word Defendant said in order to find him not guilty was error because it is a misstatement of the law. The trial court properly sustained defense counsel's objection and immediately gave the following instruction:

Ladies and gentlemen, recall my instructions, irrespective of what counsel tells you during closing arguments, it's not evidence, it's not necessarily an accurate reflection of what the law is. The law of this case is contained in the instructions that I just read to you and you'll receive these instructions when you go into the jury room to deliberate, and any conflict between what either lawyer tells you in closing argument and what is in the written instructions that I gave you, must be resolved in favor of the written instructions.

The curative instruction was sufficient to offset any prejudicial effect due to the prosecutor's erroneous statement.

■■■■ While it is possible that the jury could have been confused regarding the burden of proof as a result of these remarks, we believe any possibility of error was cured. The prosecutor clearly reminded the jury that the State has the burden of proving the crime beyond a reasonable doubt. Also, the trial court gave the jury written instructions stating the correct burden of proof surrounding the entrapment issue. There is a presumption that the jury follows the instructions they are given. *State v. Case*, 100 N.M. 714, 719, 676 P.2d 241, 246 (1984).

■■■■ Finally, Defendant points to the prosecutor's statement, "I'm not trying to distort things—I'm really not—I have no interest in that" as placing the prosecutor's credibility at issue. Once again, defense counsel objected and the objection was sustained. Defendant presents this statement as exploiting the influence of the prosecutor's office and undermining the prosecutor's objective detachment. We disagree with Defendant's interpretation of this comment. We also disagree with Defendant's position that this is analogous to the situation where a prosecutor expresses his personal view concerning the defendant's guilt. Rather, it appears that the prosecutor was attempting to correct any mistaken impression he may have given in his previous statement.

Defendant suggests that prejudice can be shown by his acquittal of the first two counts of trafficking, but not the third. However, the first and second counts had identical participants, and the deal was handled in the same fashion each time. In the third count there was another person involved, and the scenario of the transaction was significantly different. Thus, we conclude Defendant has failed to prove that the comments, when placed in the context of the trial and viewed with the curative measures taken, were so prejudicial as to deprive him of his right to a fair trial.

The trial court is given, and must exercise, considerable discretion in evaluating the propriety of argument and in curing any alleged defects. *Jett*, 111 N.M. at 314, 805 P.2d at 83. The trial court denied Defendant's motion for new trial, stating that the comments had not deprived Defendant of a fair trial. We believe that the court acted within the proper bounds of its discretion, and we will not reverse a decision denying a new trial on such a record.

*CONCLUSION*

We are satisfied that the above assertions of error raised in Defendant's brief did not deprive Defendant of any due process rights. Therefore, for the reasons stated above, we affirm the trial court.

**IT IS SO ORDERED.**

BIVINS and HARTZ, JJ., concur.