The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: October 9, 2025

**No. A-1-CA-41026**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOHNNY D. FULTON,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Richard M. Jacquez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**IVES, Judge.**

{1}    A jury found Defendant Johnny D. Fulton guilty of child abuse by endangerment in violation of NMSA 1978, Section 30-6-1(D) and (E) (2009). Defendant's primary argument on appeal is that the district court deprived him of his Sixth Amendment right to an impartial jury when it denied his motions to disqualify three potential jurors for cause and then denied his motion for a mistrial. We conclude that Defendant has not established error with respect to either type of actual bias: express bias or inferable bias. None of the jurors' statements amounted to express bias—a type of bias that requires disqualification as a matter of law—and their statements, considered in context, did not compel the district court to exercise its discretion to infer bias. As to Defendant's other arguments on appeal, we are not persuaded that the district court erred by denying Defendant's motion for a mistrial based on the admission of testimony that Defendant contends was inadmissible evidence of prior bad acts under Rule 11-404(B) NMRA. Nor are we persuaded that the district court erred by denying Defendant's motion for a new trial based on his claim that the jury pool was composed in a manner that violated NMSA 1978, Section 38-5-3 (2011). We therefore affirm.

**BACKGROUND**

{2}     We begin with a brief background to provide general context, reserving detailed descriptions of the distinct facts relevant to each claim of error. During a jury trial, the State presented evidence that Defendant and his family were together on November 25, 2020, preparing for Thanksgiving. At one point, while Defendant and his minor child, U.F., were playing a game, U.F. jokingly choked Defendant. This angered Defendant. He told U.F. not to do that and then he began to choke U.F. After letting go, Defendant asked U.F. if he understood, but U.F. did not respond. Defendant began to choke U.F. a second time. After letting go the second time, Defendant asked again if U.F. understood, and U.F. responded affirmatively. Based on these two incidents of choking, the jury found Defendant guilty of one count of child abuse.

**DISCUSSION**

**I.     Defendant Was Not Deprived of His Sixth Amendment Right to a Fair and Impartial Jury**

{3}     Defendant argues that the district court erred by denying his motions to strike three members of the jury pool—Jurors 12, 24, and 51—for cause and his motion for a mistrial because the jurors' responses to questions during jury selection established actual bias that disqualified them from serving on the jury. According to Defendant, these errors deprived him of his Sixth Amendment right to a fair and impartial jury. We disagree. As we will explain, Defendant did not establish express

bias, which would have barred the potential jurors from serving as a matter of law. The jurors' statements instead required the district court to decide, based on the evidence developed during jury selection, whether to infer that each juror was biased. We conclude that the district court did not abuse its discretion by declining to infer that any of these three jurors was biased.

{4}     We begin our analysis by describing the pertinent features of New Mexico's legal framework for analyzing claims of juror bias. We then apply that framework to Defendant's case, first analyzing Defendant's claims that Jurors 24 and 51 made statements amounting to express bias that required disqualification as a matter of law and then analyzing whether the district court abused its discretion by declining to infer bias as to Jurors 12, 24, and 51.

**A.      New Mexico's Legal Framework for Juror Bias**

{5}     Although questions regarding juror bias are far from new to New Mexico's appellate courts, *see Territory v. Emilio*, 1907-NMSC-020, ¶¶ 13-25, 14 N.M. 147, 89 P. 239, our state's current legal framework for analyzing such questions is just two years old. That framework was articulated by our Supreme Court in *State v. Romero*, 2023-NMSC-014, 533 P.3d 735, which divides juror bias into two categories. The first category, implied bias, mandates disqualification based on the nature of a juror's relationship to a person who plays an important role in the case, such as a party, lawyer, or witness. *See id.* ¶¶ 12-14, 20-21. Implied bias is not at

issue in Defendant's appeal. His appeal presents questions involving the second category, actual bias, of which there are two types in New Mexico: express bias and inferable bias.[1] S*ee id.* ¶¶ 9-11, 16-19. *Romero* requires courts to analyze each type of actual bias in a different way. *Id.*

{6}     Express bias analysis involves clear, simple rules. Express bias exists only if a potential juror makes "an unequivocal statement" that they "cannot be fair and impartial." *Id.* ¶ 10. Whether a particular statement satisfies this test may sometimes be debated. *See State v. Holtsoi*, 2024-NMCA-042, ¶¶ 7-10, 547 P.3d 770. But if express bias is established, a bright-line rule applies: The Sixth Amendment of the United States Constitution requires disqualification of the prospective juror. *Romero*, 2023-NMSC-014, ¶ 10; *accord State v. Medema*, 2025-NMCA-011, ¶ 13,

---

[1] Although *Romero* adopts certain principles from out-of-jurisdiction precedents, including precedents from federal circuit courts, our Supreme Court chose not to adopt the entire legal framework described in any of the cited precedents. As relevant here, *Romero* categorizes inferable bias as a type of actual bias, 2023-NMSC-014, ¶¶ 11, 19, while the Second Circuit case on which *Romero* relies for inferable bias principles, *United States v. Torres*, 128 F.3d 38 (2d Cir. 1997), treats inferable bias as a third broad category of bias—separate and distinct from actual bias and implied bias. *Id.* at 43 (describing actual bias as bias in fact and identifying two types of actual bias—bias expressly admitted by a juror and bias found by the judge based on a juror's answers during jury selection); *id.* at 45-46 (describing implied bias); *id.* at 46-47 (explaining that inferable bias is a third category of bias that exists in a few circumstances that "involve no showing of actual bias" and "that fall outside of the implied bias category"). In this opinion, we adhere to the framework described by our Supreme Court in *Romero*, under which inferable bias may be found only if the "facts developed at voir dire" reveal actual bias. 2023-NMSC-014, ¶ 19.

___ P.3d ___ (A-1-CA-39883 & A-1-CA-40163, Mar. 3, 2025) (recognizing that, under *Romero*, a prospective juror who "unequivocally expresses actual bias, stating that they cannot be impartial, *must* be excused for cause"); *Holtsoi*, 2024-NMCA-042, ¶¶ 7-12 (holding that the district court erred by denying a motion to strike for cause a juror who said, "I can't be a fair juror" and who "repeatedly and unequivocally indicated that he could not separate his bias regarding drug use from the facts of the case" (internal quotation marks omitted)).

{7}     In contrast, the law of inferable bias governs the grey areas courts find themselves in when a prospective juror does not unequivocally declare that they cannot be fair and impartial—and perhaps even declares that they can be—but they nevertheless disclose a fact that presents a question of whether actual bias should be inferred. *See Romero*, 2023-NMSC-014, ¶¶ 11, 19 (describing inferable bias); *State v. Dobbs*, 1983-NMCA-033, ¶ 56, 100 N.M. 60, 665 P.2d 1151 ("[A] juror's affirmance of impartiality is not conclusive."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Answering these questions requires trial courts to make discretionary judgment calls, as our Supreme Court recognized in *Romero*. A trial court "'is *allowed* to dismiss a juror on the ground of inferable bias only after having received responses from the juror that *permit* an inference that [they] would not be able to decide the matter objectively.'" *Romero*, 2023-NMSC-014, ¶ 11 (emphasis added) (quoting *United States v. Torres*, 128 F.3d

38, 47 (2d Cir. 1997)). Actual bias "'*may* be inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting *the trial judge discretion* to excuse the juror for cause.'"[2] *Id.* (emphasis added) (quoting *Torres*, 128 F.3d at 47).

{8}    Trial courts are entrusted with discretion in this context because impartiality "is a state of mind," *United States v. Wood*, 299 U.S. 123, 145 (1936), which is best discerned from the trial judge's bench; only from that vantage is it possible to observe jurors' demeanor and assess their credibility. *See State v. Johnson*, 2010-NMSC-016, ¶¶ 31, 34, 148 N.M. 50, 229 P.3d 523; *see also State v. Baca*, 1990-NMCA-123, ¶ 18, 111 N.M. 270, 804 P.2d 1089 (recognizing that decisions about for cause challenges are "rife with judgments of demeanor, credibility, and other intangible matters"). As a consequence, the discretion of trial courts is broad, and so is our deference. *See State v. Wiberg*, 1988-NMCA-022, ¶ 21, 107 N.M. 152, 754 P.2d 529 (explaining that trial courts have "a great deal of discretion in dismissing a

---

[2]In *Romero*, our Supreme Court explicitly adopted the distinction drawn in *Torres* between facts that pose a risk of bias that is significant enough to *permit* the trial judge to infer bias from facts that pose a risk of bias that is so great that it "'make[s] *mandatory* a presumption of bias.'" *Romero*, 2023-NMSC-014, ¶ 11 (emphasis added) (quoting *Torres*, 128 F.3d at 47). This distinction between inferable bias and implied bias is noteworthy here because Defendant argues inferred bias, but he does not argue implied bias—that is, he does not argue that any of the jurors disclosed relationships with any of the principals in the case that required the district court to presume bias. *See id.* ¶¶ 12-14, 20-21.

juror for cause," and that their "decision[s] will not be disturbed absent a manifest error or clear abuse of that discretion").

**B.    Express Bias: Jurors 24 and 51**

{9}    Defendant contends that certain statements made by Jurors 24 and 51 amount to express bias. We disagree.

{10}    Defendant claims that Juror 24 made an "unequivocal" disclosure of bias when she "flat out admitted that she *would* find [Defendant] guilty if he failed to testify." We cannot accept this characterization. The statement in question was made during the following exchange with Defendant's trial counsel:

Counsel:    Do you think he should explain what happened?

Juror 24:    Yeah, but if the kid's in that much distress and giving that much detail, I guess he should explain what happened.

Counsel:    The child or the adult? The adult?

Juror 24:    The adult should explain.

Counsel:    And then you would expect that?

Juror 24:    Yeah.

Counsel:    Okay. And if that didn't—if you didn't get that, you know, that'd give you a little *pause*, right? It'd give you like a pause in the back of your mind. You know, why is he not saying something? You know, *maybe* this guy did it.

Juror 24:    Yeah, but . . . yeah, I guess.

This is not an unequivocal statement that Juror 24 was unable to or unwilling to be fair and impartial if Defendant did not testify, and we therefore conclude that the record does not establish express bias with respect to Juror 24. *See Romero*, 2023-NMSC-014, ¶ 10.

{11} Nor does the record establish express bias with respect to Juror 51. Defendant asserts that, during questioning by Defendant's trial counsel, Juror 51 "confirmed that in a child abuse case, she *would*" be biased in favor of statements made by law enforcement and the Children, Youth & Families Department (CYFD). But, like Juror 24, Juror 51 did not make any definite statements:

Counsel: Do you believe CYFD and law enforcement would do a thorough job?

Juror 51: Honestly, I don't know. You know, I've made dozens of reports [to CYFD as a therapist] and the truth of the matter is, I don't get the updates on those. You know, but regardless whether I make the report or not, whether they follow through, that's up to their determination, right? So, it is on the suspicion of abuse. And then if they determine that there is enough evidence to investigate, then I would imagine that they would do their job.

Counsel: Now are you *inclined to believe* that, if they had not only investigated a crime but actually filed charges, that you know, their thoughts, beliefs, and statements are true?

Juror 51: My *natural inclination* is yes.

Counsel:    And so, it'd be fair to say that *maybe* you have a bias in favor of—in a trial like this—law enforcement statements and CYFD statements?

Juror 51:   Yes.

Because these remarks are not unequivocal statements that Juror 51 was unable or unwilling to be fair or impartial, we conclude that Defendant has not established express bias as to Juror 51. *See id.*

{12}    For these reasons, we hold that the bright-line rule requiring disqualification in instances of express bias does not apply to either Juror 24 or Juror 51. *See id*. The absence of express bias left the district court in the grey area of inferable bias as to Jurors 24 and 51, as well as Juror 12.

## C.    Inferable Bias: Jurors 12, 24, and 51

{13}    The district court's task was to make discretionary judgment calls about whether to infer that Jurors 12, 24, and 51 were actually biased. The law required the district court to begin with the presumption that all three potential jurors could be fair and impartial, *see Medema*, 2025-NMCA-011, ¶ 14; to place the burden of proving bias through facts developed during jury selection on Defendant as the challenging party, *see Romero*, 2023-NMSC-014, ¶ 19; *Johnson*, 2010-NMSC-016, ¶ 31; and to consider all relevant evidence revealed throughout the jury selection process. *See State v. Sanchez*, 1995-NMSC-053, ¶¶ 9-12, 120 N.M. 247, 901 P.2d 178 (reviewing jury selection in its entirety to determine whether the defendant

established actual bias); *State v. Rackley*, 2000-NMCA-027, ¶¶ 10-11, 128 N.M. 761, 998 P.2d 1212 (reviewing a juror's comments for actual bias in the context they were made); *cf. Darden v. Wainwright*, 477 U.S. 168, 175-78 (1986) (examining "the context surrounding" the exclusion of a juror for bias under the legal standard for disqualification in capital punishment cases and upholding the exclusion after it "[v]iew[ed] the record of voir dire in its entirety"). Considering the statements relied on by Defendant in the context of jury selection as a whole, we hold that the district court's determinations that Defendant failed to carry his burden were not "obviously erroneous, arbitrary, or unwarranted" and therefore neither its refusal to strike the jurors for cause nor its denial of Defendant's mistrial motion was an abuse of discretion. *See Johnson*, 2010-NMSC-016, ¶ 31 (internal quotation marks and citation omitted); *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016 (recognizing that the standard of review for a motion for mistrial is abuse of discretion).

{14} Because Defendant's arguments about Jurors 12 and 24 are based on remarks they made about similar subject matter, we discuss these jurors together. We then discuss Juror 51.

**1.      Jurors 12 and 24**

{15}      Jurors 12 and 24 disclosed their personal opinions about hearing an accused person's version of events. Defendant highlights the following exchange between Juror 12 and the prosecutor:

Counsel:      You indicated that you think . . . [D]efendant should speak up for himself, please say a little bit more.

Juror 12:      The way I see it, I see when it comes to an allegation where someone is being charged, it goes both ways. Now, of course we all follow the evidence and see where it leads, but sometimes evidence can be flawed. I'm not saying that it is, but that is my personal opinion. Now I believe that it has two sides of the story. We can convict and say he's guilty, he's not guilty. That's my personal opinion and that's the way I see it. I see there's two ways to one story.

Counsel:      With that in mind, [Juror 12], I want to jump in. Knowing that our law does not require the defendant to tell his side, if we call it that, that the State really only needs to present one side, are you able to be fair and impartial towards . . . [D]efendant if you never hear . . . [D]efendant's side, or never hear anything from his attorneys?

Juror 12:      I would still be fair in deciding a decision. But I'm a very, very emotional person when it comes to children. And I could make a decision but at the same time I think my emotions might get ahead of me. And I don't want to make the wrong decision and send someone, of course he deserves to spend his life in jail, or spend time in jail. But at the same time too, I don't want to make a rash decision and knowing that I put the wrong man in jail.

Counsel:      Understood. You said that you could be fair. Can you be impartial?

Juror 12:      I can be impartial.

Like Juror 12, Juror 24 described an expectation to hear from the accused, and she then agreed with Defendant's counsel that if she did not hear from an accused person, she might ask herself whether that person might be guilty. Defendant argues that these disclosures established that both jurors could not be fair and impartial if Defendant chose not to testify.[3] Considering all of the relevant information available to us about each juror, we hold that the district court did not abuse its discretion.

{16}    Defendant's arguments are similar to arguments rejected by this Court in *Rackley*. There, the defendant argued that the district court erred by declining to disqualify two jurors. *Rackley*, 2000-NMCA-027, ¶ 11. The first juror said he resented the defendant for relying on his lawyer to speak for him, but later the juror said that although the defendant had a constitutional right to speak, the juror did not think the defendant was required to speak. *Id.* ¶ 10. The second juror said that she wanted to know where the defendant was when the crime occurred, but later the juror said that if the prosecution failed to prove beyond a reasonable doubt that the defendant was guilty, she would vote against convicting him, and that it would not

---

[3]Defendant also argues, for the first time on appeal, that Juror 12 should have been disqualified in part based on statements he made regarding his strong emotions about children and the possibility that those emotions might lead him to make a rash judgment. Defendant did not preserve this issue by presenting it to the district court when he moved to strike Juror 12, and on appeal Defendant does not ask us to review the unpreserved issue under any exception to the preservation rule. *See* Rule 12-321 NMRA. We therefore do not address the issue further.

bother her if the defendant chose not to testify. *Id.* This Court held that the district court did not abuse its discretion by refusing to excuse the two jurors for cause. *Id.* ¶ 11. Critically, this Court recognized that the jurors' statements must be "taken in context." *See id.* Considering the context, this Court concluded that both jurors' statements "merely reflected a layperson's natural desire to hear [the d]efendant's version of events in [their] own words; these statements did not indicate that [the jurors] were unable or unwilling to decide [the d]efendant's case on the facts established at trial and the trial court's instructions on the law." *Id.* This Court observed that the defendant appeared to have relied on "the erroneous assumption that a juror is biased simply because the juror has [such] a natural expectation." *Id.*

{17}   We think Defendant relies on a similar erroneous assumption about Jurors 12 and 24. Both jurors' statements about their personal views must be examined together with all other pertinent evidence developed during jury selection. *See Sanchez*, 1995-NMSC-053, ¶¶ 9-12; *Rackley*, 2000-NMCA-027, ¶ 11; *cf. Darden*, 477 U.S. at 175-78. As we will explain, our holistic review of the relevant evidence does not reveal any basis for concluding that the district court abused its discretion by declining to infer that the jurors' personal opinions amounted to actual bias.

{18}   The question for the district court was whether Defendant had established that the personal opinions disclosed by each juror would "prevent or substantially impair the performance of [their] duties as a juror in accordance with [their] instructions

and [their] oath." *State v. Gardner*, 2003-NMCA-107, ¶ 16, 134 N.M. 294, 76 P.3d 47 (internal quotation marks and citation omitted). A juror does not *necessarily* have a disqualifying bias if they have a personal opinion about whether a defendant should provide their version of events, or about whether a defendant who does not provide their version is more likely to be guilty than a defendant who does provide their version. The law does not require jurors to purge such personal opinions from their minds. *State v. Fransua*, 1973-NMCA-071, ¶ 7, 85 N.M. 173, 510 P.2d 106; *accord Medema*, 2025-NMCA-011, ¶ 14. Instead of holding jurors to this impossibly high standard, the law requires that each juror be willing and able to "put aside their opinions" so they can serve fairly and impartially. *Fransua*, 1973-NMCA-071, ¶ 7; *accord Medema*, 2025-NMCA-011, ¶ 14. In other words, a district court's task is to discern whether a juror's opinions would impact their ability "to function" free from bias and partiality. *Rackley*, 2000-NMCA-027, ¶ 11. To complete this critical and sometimes challenging task, district courts must "focus on the *presence or absence* of evidence demonstrating that [each juror was] unwilling or unable to decide the case based on the evidence adduced at trial and the [jury] instructions." *Id.* (emphasis added).

{19}    Applying these principles, we hold that the district court did not abuse its discretion by concluding, based on the evidence available to it, that Jurors 12 and 24

were willing and able to fairly and impartially decide the case based on the evidence and the jury instructions. We discuss each juror in turn.

{20} Considered collectively, Juror 12's statements, like the jurors' statements in *Rackley*, appear to reflect nothing more than a layperson's natural desire to hear the accused's version of events. *See id.* Although Juror 12 expressed a personal opinion that it would be preferable to hear from the accused, Juror 12 also affirmed clearly and definitely that he could be fair and impartial even if Defendant did not testify. Although Defendant is correct that Juror 12's affirmations of neutrality are not dispositive magic words that prohibited the district court from finding actual bias, *see Dobbs*, 1983-NMCA-033, ¶ 56, it is also true that the district court was not required to reject the affirmations. *See, e.g.*, *State v. Hernandez*, 1993-NMSC-007, ¶¶ 51-52, 115 N.M. 6, 846 P.2d 312 (affirming a district court's decision not to excuse various jurors because each juror in question stated they "could render a fair and impartial verdict"). Whether to accept the affirmations was a factual question for the district court to answer based on its assessment of Juror 12's credibility, *see Patton v. Yount*, 467 U.S. 1025, 1036-38 (1984), and we will not revisit that assessment. *See Hernandez*, 1993-NMSC-007, ¶ 52 ("[T]he trial judge is in the best position to assess the demeanor and credibility of prospective jurors.").

{21} In support of his argument that the district court should not have accepted Juror 12's affirmations, Defendant relies on *State v. Sims*, 1947-NMSC-071, 51

N.M. 467, 188 P.2d 177, but we see significant differences between the facts of *Sims* and the facts here. In *Sims*, our Supreme Court concluded that the district court abused its discretion by refusing to strike for cause a juror who "had plainly disclosed that he was disqualified to sit in the case" due to the nature of the allegation, but who eventually said—under "skillful questioning" by the district court—"that he would return a verdict in accordance with the law and the evidence." *Id.* ¶¶ 2, 4. In contrast, as we have already explained, Juror 12 did not plainly disclose that he was disqualified, and, in any event, Juror 12's affirmations of neutrality were elicited through two simple questions—whether he could be fair if he never heard from Defendant or defense counsel and whether he could be impartial—not through the sort of "skillful questioning" that occurred in *Sims*. *Sims* therefore does not support the conclusion that the district court abused its discretion by declining to infer that Juror 12 was actually biased, and we are not aware of any other legal or factual support for that conclusion.

{22}   We are also unaware of any support for the conclusion that the district court abused its discretion as to Juror 24. Like Juror 12, Juror 24 stated a personal opinion about whether an accused person should provide their version of events. Specifically, Juror 24 said that the accused "should explain what happened" and that she "would expect that" they testify. We acknowledge that Juror 24 went a step beyond expressing a natural desire to hear from the accused when she disclosed that

if an accused person did not testify, she *might* ask herself whether that person was guilty. In other words, Juror 24 acknowledged that there was a possibility that if Defendant did not testify, she might be inclined to doubt Defendant's innocence. This was potential bias, and it gave Defendant the right to ask follow-up questions. *See Romero*, 2023-NMSC-014, ¶ 15. Further questioning could have revealed more information about what Juror 24's beliefs were and whether they might prevent her from deciding the case fairly and impartially if Defendant chose not to testify. *Cf. Fuson v. State*, 1987-NMSC-034, ¶¶ 3-5, 105 N.M. 632, 735 P.2d 1138 (concluding that a juror who disclosed that he knew about half of the witnesses should have been disqualified because the juror stated in response to follow-up questions that he could not be certain that he could be impartial and that there was a possibility that his knowledge of the witnesses would affect the way he decided the case). The defense could have explored whether Juror 24 understood and accepted the law she would be required to apply—which places the burden of proof on the prosecution, recognizes a defendant's right not to testify, and prohibits any inference of guilt when that right is exercised. *See* UJI 14-5031 NMRA; UJI 14-5060 NMRA. The defense did not ask any more questions.

{23}    But the district court did, and Juror 24's responses are relevant to the holistic inferable bias analysis. After the State and Defendant finished their voir dire, the district court asked all of the potential jurors collectively whether they understood

that Defendant had the right not to testify, and Juror 24 responded affirmatively. The district court then instructed all of the potential jurors to raise their hands if they did not understand that the State had the burden of proof. Juror 24 did not raise her hand. Then the district court made two more pertinent inquiries. The court asked the potential jurors to raise a hand if they "would want to hear both sides," and to raise a hand if they "would need to hear both sides." Juror 24 did not raise her hand in response to either question.

{24} These responses could reasonably be interpreted as assurances that Juror 24 understood and accepted the law on the burden of proof and the presumption of innocence, as well as the law on an accused person's right not to present their version of events. How much weight to give these responses, how much weight to give the tentative statement relied on by Defendant, and how to resolve the tension between those responses were evaluations for the district court to make. *See Johnson*, 2010-NMSC-016, ¶ 34 ("The trial court, who is listening first hand to counsel's questions and the panel members' responses, is in the best position to determine whether voir dire has sufficiently exposed any biases that may preclude jurors from acting fairly and impartially." (text only) (citation omitted)); *Hernandez*, 1993-NMSC-007, ¶ 52 (recognizing that district courts determine credibility); *cf. State v. Romero*, 1966-NMSC-126, ¶ 9, 76 N.M. 449, 415 P.2d 837 (recognizing that the district court, as the trier of fact, determines the weight to be given to the evidence). And, in addition

to evaluating everything that Juror 24 did say, the district court was required to consider what she did not say. *See Rackley*, 2000-NMCA-027, ¶ 11. Juror 24 did not say that she had any strongly-held views about accused people who choose not to provide their version. Nor did she say anything else indicating that her views were such that they might prevent her from neutrally applying the law, including the law prohibiting jurors from drawing inferences of guilt based on an accused person's silence. *See* UJI 14-5060. In light of all of this, we conclude that the district court could have reasonably concluded that the statements relied upon by Defendant did not—without more—rebut the presumption that Juror 24 could be fair and impartial. *See Romero*, 2023-NMSC-014, ¶ 19 (inferable bias "must be grounded in facts developed at voir dire" that reveal that a juror is actually biased); *Dobbs*, 1983-NMCA-033, ¶ 56 ("If there was a genuine concern about any of these jurors, then an effort should have been made to elicit more information than appears in this record.").

{25}     For these reasons, we hold that the district court acted within its discretion by refusing to disqualify Jurors 12 and 24 based on inferred bias, and by denying Defendant's motion for mistrial.

**2.     Juror 51**

{26}     Defendant argues that Juror 51 should have been disqualified based on the statements described above. Juror 51 revealed potential bias when she acknowledged

that "maybe" she would be biased in favor of statements from law enforcement and CYFD. *See Romero*, 2023-NMSC-014, ¶ 15 (identifying a potential bias). Although this gave Defendant a right to ask more questions to discover more about Juror 51's beliefs and their potential impact on her ability to function neutrally as a juror, *see id.*, the defense did not do so. The district court denied Defendant's motion to excuse Juror 51 for cause and denied the State's request to ask Juror 51 more questions. Implicit in the district court's rulings are determinations that additional questioning by the State was unnecessary because the information already available about Juror 51 did not warrant disqualification.

{27}    Defendant has not persuaded us that the district court's discretionary decision not to infer bias was "obviously erroneous, arbitrary, or unwarranted." *See Johnson*, 2010-NMSC-016, ¶ 31 (internal quotation marks and citation omitted). Again, the law required the district court to presume that Juror 51 could be fair and impartial, *see Medema*, 2025-NMCA-011, ¶ 14, and to place the burden to rebut that presumption on Defendant as the challenging party, *see Johnson*, 2010-NMSC-016, ¶ 31. To determine whether Defendant carried that burden, the district court was required to consider all of the relevant information available to it. *See Sanchez*, 1995-NMSC-053, ¶¶ 9-12; *Rackley*, 2000-NMCA-027, ¶ 11; *cf. Darden*, 477 U.S. at 175-78. That information included the suggestive and uncertain phrasing of the questions that elicited Juror 51's acknowledgement and her statements earlier in jury selection

that she could be a fair and impartial juror in a child abuse case and that she did not believe Defendant was guilty merely because he had been charged with a crime. The district court could have reasonably found that this evidence—and the absence of any additional evidence that might have been elicited through further questioning—weighed in favor of finding that Juror 51 was willing and able to be fair and impartial. *See Wood*, 299 U.S. at 145; *Johnson*, 2010-NMSC-016, ¶¶ 31, 34. With the benefit of all of this information, the district court declined to infer actual bias, and we cannot say that it abused its discretion. We have no basis for concluding that it was unreasonable for the district court to find that Juror 51 could set aside her personal inclinations, *see Medema*, 2025-NMCA-011, ¶ 14, and neutrally apply the law as described in the jury instructions to the evidence presented in court, *see Rackley*, 2000-NMCA-027, ¶ 11.

{28} For these reasons, we hold that the district court did not abuse its discretion by declining to infer that Jurors 12, 24, and 51 were actually biased. Because the district court's judgments that these jurors were willing and able to serve neutrally were not obviously erroneous, arbitrary, or unwarranted, the district court did not stray beyond the wide boundaries of its discretion. *See Johnson*, 2010-NMSC-016, ¶ 31. And we would stray beyond our narrow boundaries in this context if we were to substitute our judgments for the district court's. *See State v. Lopez*, 1978-NMSC-060, ¶ 6, 91 N.M. 779, 581 P.2d 872.

## II. The District Court Did Not Err in Denying Defendant's Motion for Mistrial Based on Evidence of Prior Bad Acts

{29} Defendant argues that the court erred by denying his motion for a mistrial because evidence of prior bad acts—U.F.'s testimony that Defendant choked him "many times"—was prejudicial and the district court's instruction to the jury that this testimony exclusively related to events on November 25, 2020, failed to cure the prejudice from U.F.'s statements.[4] We are not persuaded.

{30} Defendant moved for a mistrial during the direct examination of U.F. He objected to a brief exchange that occurred after U.F. finished describing a single choking incident:

State:     What happened next?

U.F.:     Then we just went back to cooking, I think.

State:     So, you only remember him choking you one time?

U.F.:     I remember many times. But I remember that he did choke me other times, but I don't remember like—

State:     Let me jump in real quick.

---

[4]Defendant also argues that the State improperly elicited testimony from Officer Adam Medina about Defendant's prior bad acts earlier in the trial and that the officer's testimony should have been considered in Defendant's motion for a mistrial. However, Defendant did not preserve his arguments that Officer Medina's testimony should be considered in his motion for mistrial, and Defendant does not invoke any exception to the preservation rule. *See* Rule 12-321. We therefore decline to further discuss this claim of error.

Judge:       Hold on. [Defense counsel] speak up.

Defense:     Objection. Can we approach?

In a short bench conference, Defendant orally moved for a mistrial, and in the alternative offered to stipulate that "any of these choking incidents being referenced only occurred on November 25, 2020." The State agreed to the stipulation. After denying the motion, the court gave the following instruction:

> Ladies and gentlemen of the jury, as you've heard already, this testimony regards an incident that occurred on or about November 25, 2020. So, I'm going—the parties are going to stipulate that any statements that have been made by this witness relate[] specifically to incidents only occurring on November 25, 2020.

{31}    We review the court's denial of Defendant's motion for mistrial for an abuse of discretion. *See Hernandez*, 2017-NMCA-020, ¶ 14. Generally, in situations in which inadmissible evidence is inadvertently elicited, a court acts within its discretion if it denies a motion for mistrial but offers to give "a prompt admonition to the jury to disregard and not consider [the] inadmissible evidence" because doing so "sufficiently cures any prejudicial effect which might otherwise result." *Id.* ¶ 17 (omission, internal quotation marks, and citation omitted); *accord State v. Fry*, 2006-NMSC-001, ¶¶ 52-53, 138 N.M. 700, 126 P.3d 516. However, if "inadmissible testimony is intentionally elicited by the prosecution," a court cannot cure the prejudice of the testimony with an instruction. *Hernandez*, 2017-NMCA-020, ¶ 17 (text only) (citation omitted). In such an instance, a mistrial is required if "there is a

reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *See id.* (internal quotation marks and citation omitted).

{32}    Assuming without deciding that the testimony at issue was inadmissible, we conclude that it was elicited by the State inadvertently, not intentionally, and that the district court therefore acted within its discretion by denying Defendant's mistrial motion and giving a curative instruction. In support of his argument that the testimony at issue was elicited intentionally, Defendant relies on a pretrial ruling prohibiting Rule 11-404(B) evidence, and the district court's instruction to the State to keep its witnesses "focused and on the right track." Defendant contends that the State intentionally disregarded this directive when it posed the "open-ended question which invited" U.F.'s comment. Based on our review of the record, we disagree. Importantly, the instruction given to the jury regarding the essential elements of the offense required the State to prove that Defendant choked U.F. twice on November 25, 2020. And in the pretrial ruling on propensity evidence, the State informed the district court that it asked its witnesses to limit their "testimony [to] what occurred on November 25th, 2020." Consistent with this representation, the testimony at issue was elicited by the State while it was asking U.F. what happened on November 25, 2020. During that line of questioning, U.F. described a single choking incident. After U.F. stated that Defendant stopped choking him, the State asked what happened next. U.F. stated they went back to cooking, implying that the situation concluded. The

State followed up by asking if U.F. only remembered one choking incident, and U.F. testified that he remembered Defendant choking him "many times." As we understand the record, the State was attempting to ask U.F. about a second choking event on November 25, 2020, rather than intentionally seeking to elicit testimony about choking incidents on other dates. We therefore conclude that it was within the district court's discretion to deny the motion for mistrial and instead give a prompt instruction directing the jury not to consider the inadmissible evidence. *See Hernandez*, 2017-NMCA-020, ¶ 17.

{33}    This brings us to Defendant's next argument: that the district court abused its discretion because the curative instruction that it chose to give "was insufficient to rectify the harm caused." This argument has two parts. First, Defendant argues that U.F.'s comment undermined Defendant's credibility by painting him as an abusive father. Second, Defendant argues that the instruction was factually inaccurate. We are not persuaded that the district court erred. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (placing the burden on the appellant to rebut the presumption that the district court was correct).

{34}    The first part of Defendant's argument is unpersuasive because he relies on the conclusory assertion that his credibility was undermined without explaining how the testimony at issue impacted Defendant's credibility. Defendant cites *Hernandez*, but he does not explain how his case is similar to *Hernandez*, and we perceive

meaningful differences between that case and Defendant's case. There, a police officer testified falsely that Defendant had confessed, *see* 2017-NMCA-020, ¶ 16, and this Court emphasized that "a confession can be highly prejudicial," *id.* ¶ 21. But in Defendant's case, the testimony at issue does not involve false testimony that Defendant admitted to any element of the offense but instead involves the testimony of the victim, whose credibility was being challenged by the defense. Based on the argument presented by Defendant, we are unpersuaded that a prompt instruction could not sufficiently cure any prejudice Defendant experienced. *See id.* ¶ 17.

{35}    The second part of Defendant's argument fails based on our comparison of the curative instruction given in Defendant's case and the one given in *Hernandez*. Defendant cites *Hernandez* in support of his argument that the curative instruction given in his case was inadequate because, like the instruction in *Hernandez*, it was inaccurate. Specifically, Defendant argues that the curative instruction in his case inaccurately limited the testimony to events on November 25, 2020, "even though it was obvious . . . that [U.F.] was referring to other occasions." We are unpersuaded. Importantly, U.F. did not say when the "many times" and "other times" occurred. Just as U.F.'s statement could be interpreted as describing events during a broad timeframe, as suggested by Defendant, it could also be interpreted as describing events on November 25. Indeed, the State alleged multiple choking events on November 25; the jury instruction on the essential elements of the offense referred

to multiple alleged chokings on November 25; the testimony at issue was elicited during the State's questioning about what happened on November 25; and the jury had already heard testimony from U.F.'s sister that Defendant choked U.F. multiple times on November 25. The curative instruction required the jury to interpret the testimony at issue in a way that was consistent with the charge against Defendant and other evidence—that is, in a way that was plausible under the circumstances. We therefore conclude that the curative instruction is not inaccurate, and that the rationale of *Hernandez* does not apply. Because we presume that the jury followed the curative instruction in interpreting the testimony as describing only events on November 25, *see State v. Sellers*, 1994-NMCA-053, ¶ 28, 117 N.M. 644, 875 P.2d 400, we see no abuse of discretion in the district court's decision to give the curative instruction instead of granting Defendant's motion for mistrial.

**III. Defendant Failed to Establish a Right to a New Trial Based on Evidence of the Jury Venire's Composition**

{36} After trial, Defendant submitted various requests under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2025), for information on "jury source lists." Upon receiving information that the jury database was compiled by a third-party vendor, rather than the Department of Information Technology, Defendant moved for a new trial. He argued that this outsourcing violated Section 38-5-3. The district court denied the motion, reasoning in part that Defendant only established that he discovered the information

after trial and failed to establish the five other elements necessary to grant a new trial. *See State v. Garcia*, 2005-NMSC-038, ¶ 8, 138 N.M. 659, 125 P.3d 638. On appeal, Defendant argues that the district court erred because the statutory violation was clear and even had he discovered the information earlier, the court would have denied his motion. We are not persuaded.

{37}   We review a court's denial of a motion for a new trial for an abuse of discretion. *Id.* ¶ 7. To obtain a new trial based on newly discovered information, Defendant must show that the new evidence meets six requirements:

> [(1)] it will probably change the result if a new trial is granted; [(2)] it must have been discovered since the trial; [(3)] it could not have been discovered before the trial by the exercise of due diligence; [(4)] it must be material; [(5)] it must not be merely cumulative; and [(6)] it must not be merely impeaching or contradictory.

*Id.* ¶ 8 (internal quotation marks and citation omitted). Because we do not believe Defendant has shown that the new information "could not have been discovered before the trial by the exercise of due diligence," *id.*, we reject Defendant's claim of error on this basis alone. Defendant's motion was based exclusively on information obtained through IRPA requests that he made in December 2022. At the motion hearing, Defendant admitted he did not submit any requests before the trial in August 2022, and there is no evidence in the record to cast doubt on the commonsense conclusion that Defendant could have discovered the very same information had he submitted his IPRA requests before trial instead of months after it. *See* § 14-2-8(D)

(requiring a custodian to furnish records no "later than fifteen days after receiving a written request"). We therefore conclude that the district court did not abuse its discretion by denying Defendant's motion.

**CONCLUSION**

{38}   We affirm.

{39}   **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Chief Judge**

_____
**MEGAN P. DUFFY, Judge**